CATRON, PLAINTIFF IN ERROR, v. THE BOARD OF COUNTY COMMISSIONERS OF ARCHULETA COUNTY, DEFENDANT IN ERROR.

1. ASSESSMENT—PRACTICE ON APPEAL.
The statute (Sess. Laws 1889, p. 24) providing for an appeal to the district court, upon disallowance of a petition for modification of an assessment, regulates the practice in such cases. The petition to the board constitutes the pleading, and the filing of a complaint in the district court is wholly unnecessary.

2. CONSTITUTIONAL LAW—TITLE OF ACT.
Generality in the title of an act is not objectionable. The constitutional

requirement is sufficiently complied with so long as the matters contained in the bill are directly germane to the subject expressed in the title.

3. SAME.

In an act, the title of which is "An act to provide for an appeal from the board of county commissioners upon disallowance of petition for modification of assessment," the first section specifies certain matters which are required to be inserted in the petition to the board; held, such requirements are germane to the subject expressed in the title.

4. CONSTITUTIONAL LAW—TAXATION.

It is a requirement of the constitution that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the same. Uniformity in the mode of making assessments is essential to uniformity of taxes.

5. TAXATION—PROPERTY OF NONRESIDENTS.

Lands belonging to citizens of the United States residing without this State cannot be taxed higher than lands belonging to residents thereof.

6. CONSTITUTIONAL LAW.

The unconstitutionality of part of an act does not necessarily invalidate other portions thereof.

7. PRESUMPTIONS—BURDEN OF PROOF.

The law presumes that public officers discharge their duties in conformity with the statutes, and the burden of showing to the contrary rests upon him who relies thereon.

*Error to the District Court of Archuleta County.*

PLAINTIFF in error, a nonresident owner of property situate in Archuleta county, filed his petition before the county commissioners of that county complaining of the assessment of his property for taxation by the county assessor.

By the petition it is shown that he is the owner of that part of the Tierra Amarilla grant situate in Archuleta county, comprising about 86,000 acres of land.

It is alleged that in the year 1891 this land was assessed by Archuleta county for the purpose of taxation at 75 cents per acre; that said assessment was made without the consent, and against the will of petitioner, and is excessive. The petition further alleges: "That 4680 acres of said lands are worth no more than $1.50 per acre, and 11,500 acres of said

lands are worth no more than $1.25 per acre, and that the residue thereof, consisting of 69,820 acres, is of the value of no more than one cent per acre. That said tract of land was assessed by the said county for the whole sum of $64,500, when the true cash value thereof did not exceed the whole sum of $22,093.20. This petition, which is duly verified, is in the form required by the act of 1889.

At a regular meeting of the board of county commissioners this petition was taken up for consideration; evidence of witnesses was taken, and after argument by counsel the commissioners refused to modify the assessment and entered an order accordingly. From this action of the board of county commissioners the plaintiff in error gave notice of an appeal to the district court. He thereupon paid the taxes as required by the statute as a condition to the granting of the appeal, tendered his bond, which was duly approved and filed, and the cause in due time was transferred to the district court of Archuleta county. After the cause reached the district court the petition filed before the board of county commissioners was supplemented by a complaint on the part of the plaintiff. The complaint is in substance a reiteration of the facts stated in the petition. To this complaint a demurrer was filed. As grounds of demurrer the county alleged that the complaint did not state facts sufficient to constitute a cause of action, and that the district court had no jurisdiction of the subject-matter of the action. Thereafter such proceedings were had before the district court that the demurrer was sustained and the appeal dismissed. To reverse this judgment the case is brought here upon error.

Mr. JOHN H. KNAEBEL and Mr. CHARLES A. JOHNSON, for plaintiff in error.

Messrs. MILLER & REESE, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

We are not advised by the record of the specific reason

assigned by the court below for the dismissal of the appeal. It is stated by counsel for plaintiff in error that it was dismissed because the district court was of the opinion that the act under which the appeal was taken was unconstitutional and void. That such was the reason of the action of the district court is in fact conceded by defendant in error, although in this court it is further contended that the complaint does not state facts sufficient to constitute a cause of action.

The statute of 1889, providing for an appeal upon disallowance by the board of county commissioners of any petition for modification of assessment for taxation, contains quite explicit directions for the regulation of the practice in such cases. It provides, among other things, that a petition may be presented within a certain time to the board of county commissioners by the party aggrieved, and specifies what such petition shall contain. It is further provided that in case the prayer of such petition be not granted the cause may be taken to the district court by appeal. There are no provisions in reference to written pleadings in the district court. The act is intended to provide a summary mode of relief in cases of unjust assessment, and the petition to the board of county commissioners constitutes the pleading upon which the petitioner is required to rest his case. The filing of a complaint in the district court was entirely unnecessary, and it might have been stricken from the files as irrelevant had that motion been interposed by the county. This being a special proceeding it is not affected by the act of 1891. Sessions Laws 1891, p. 110.

We shall therefore consider the case in this court entirely upon the petition presented to the board of county commissioners, and the statute authorizing an appeal to the district court. This statute will be found in the Laws of 1889, page 24. The particular provision of the constitution which the act is supposed to contravene, is section 21 of article V, which provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall

be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

In applying this constitutional provision to the act in question we may be aided by a brief résumé of the history of the provision.

At one time the prefixing of a title to an act was deemed of so little importance that it was the practice in parliament to allow the clerk of the house in which the bill originated to supply the title. Such, however, has not been the rule in this country. Here, from the earliest times, it has been the practice of both houses to aid in framing the title. It was by reason of such legislative sanction that, in order to ascertain the object of an act, for the purpose of construing doubtful language, an examination of the title has been frequently resorted to by the courts. In this way the title of an act was first given importance, and the exercise of care in framing it, as well as the body of the act, became necessary. Recently, by constitutional provision in some of the states somewhat similar in character to our own, the title has been made a matter of primary importance.

In considering this constitutional provision it is important to bear in mind the evils sought to be corrected thereby. The practice of putting together in one bill subjects having no necessary or proper connection, for the purpose of enlisting in support of such bill the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits, was undoubtedly one of the evils sought to be eradicated.

Another object is to prevent surprise and fraud from being practiced upon legislators, and to apprise the people of the subjects of legislation by the titles of the bills, so that they might have an opportunity to be heard by petition or otherwise. But few are able, or care to take the time necessary to keep informed of all the legislation proposed at a single session, where it is necessary to examine in detail every bill in order to obtain this information. When, however, each

proposed act is confined to a single subject and that subject is clearly expressed in the title, those interested are put upon inquiry when legislation is proposed affecting such subject, without its being necessary for them to examine every bill for the purpose of seeing that nothing objectionable is coiled up within the folds of the measure.

So far as the first of the above evils is concerned, unfortunately, neither this nor any other provision yet devised upon the subject has produced the desired result. Even a casual investigation into the methods adopted by modern legislators will show that the passage of any bill upon its intrinsic merits is of rare occurrence, log rolling being as successfully carried on to secure the passage of a number of bills upon different subjects as if the same legislation could, as formerly, be included in a single bill. The constitutional provision, it is believed, however, does furnish a remedy for the other evils against which it is directed.

Speaking generally of this provision, it is to be observed that it was not designed to hinder or unnecessarily obstruct legislation, but to prevent its having this effect it must have a reasonable and liberal construction. When so construed, it is neither unreasonable nor diffcult to comply with it.

*In re Breene,* 14 Colo. 401, this court said: " When intelligently and carefully observed, it embarrasses proper legislation but little. The general assembly may, within reason, make the title of a bill as comprehensive as it chooses, and thus cover legislation relating to many minor but associated matters."

From this language and what follows in the same opinion it is manifest that the generality of a title is oftener to be commended than criticised, the constitution being sufficiently complied with so long as the matters contained in the bill are directly germane to the subject expressed in the title. Legislators, frequently, and sometimes good lawyers, fall into the mistake of entering into particulars in the title, thereby curtailing the scope of the legislation which might properly be enacted within the limits of a single act.

So far as the title to the act in question is concerned, it furnishes some foundation for the statement of counsel to the effect that the title, by its very awkwardness, discloses a special solicitude on the part of the legislature to conform to the spirit as well as the letter of the constitution. While a shorter and more comprehensive title would have been advisable, still, we are not prepared to say that the title selected is insufficient to cover the provisions of the act.

The title is "An act to provide for an appeal from the board of county commissioners upon disallowance of petition for modification of assessment." By this we are apprised that the action of the board of county commissioners in the premises may be reviewed upon appeal. The first section of the act specifies certain matters that are required to be inserted in the petition. As this petition is the basis of the proceeding upon the appeal as well as before the board of county commissioners, a requirement that it must contain certain allegations is certainly germane to the subject of appeals as expressed in the title, and the act in this respect is not obnoxious to the constitutional provision invoked.

We are, however, advised by counsel that it was upon section 3 of the act that the court resolved the constitutional point against the petition. Section 3 reads as follows:

" Sec. 3. The board, or district court, in the consideration of such petition, shall be governed by the values fixed upon other assessable property similarly situated in such county for the purposes of taxation."

This provision was undoubtedly inserted in view of the requirement of our constitution that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the taxes. There certainly cannot be any uniformity of taxes unless there is uniformity in the mode of making assessments.

In Welty on Assessments, p. 327, it is said:

" Uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without

uniformity in the mode of assessment as well as in the rate of taxation."

The petitioner being a nonresident, his rights are also guaranteed by the election ordinance under which Colorado was admitted as a state. This provides that " the lands belonging to citizens of the United States residing without said state shall never be taxed higher than the lands belonging to residents thereof." See sec. 219, p. 109, Mill's Constitutional Annotations.

Aside from this, if we are to assume that section 3 of the act in question is repugnant to the constitutional provision relied upon, such conclusion can in no way destroy the balance of the act, as it is manifest that conferring a right of appeal to the district court is the principal object of the act, and this right in no way depends upon the validity of section 3. Such would be the result upon principles well established elsewhere, and with us embodied as a condition in the constitutional inhibition relied upon, the framers of our constitution having emphasized the matter by using the following language : " But if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

We are of opinion, however, that the matter embraced in section 3 is sufficiently germane to the subject expressed in the title of the act, to relieve the section from constitutional objection. When examined, it will be found no more than a regulation of the proceedings upon appeal, and as such does not fall within the mischiefs sought to be prevented by the constitutional provision. It is neither repugnant to the letter nor spirit of the inhibition. Cooley's Constitutional Limitations, p. 175. *Murphey v. Menard,* 11 Texas, 673.

In support of the decision of the district court it is said that section 3 establishes a different rule of assessment from that generally in force in the state. This argument is founded upon those provisions of the statute requiring all property to be assessed at its full cash value. To give this

argument any force whatever, we must assume that the public officers in making assessments of property in Archuleta county have violated their oaths and disregarded the law. This is an assumption that we are not at liberty to indulge, if we were so inclined, as we are not. The law presumes that public officers discharge their public duties in conformity with the statutes, and the burden of showing the contrary rests upon him who relies thereon.

By the terms of section 3 the district court in fixing the value upon appeal is to be governed by the values fixed for the purpose of taxation upon other real property in such county. Assuming as we must, in the absence of proof to the contrary, that the officers conscientiously obeyed the law in fixing the values of such other property, the rule provided for fixing the value upon appeal is the same as in other cases.

Our conclusion is that the act in question is not objectionable to the constitutional provision relied upon. The judgment of the district court is therefore reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*