### No. 13,108.

BUSHNELL *v.* THE PEOPLE.
(19 P. [2d] 197)

Decided January 30, 1933.

Mr. MARION F. JONES, Mr. RALPH W. McCRILLIS, for plaintiff in error.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. COLIN A. SMITH, Assistant, for the people.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

FRANK Bushnell was charged with violating chapter 120, Session Laws of 1931, by operating as a private

motor vehicle carrier of freight for hire without a permit thereby required. A demurrer, charging the act unconstitutional, was overruled and upon trial to the court, defendant was found guilty and fined $50 and costs, which judgment he here seeks to review. It is urged that the lower court erred in not holding the act unconstitutional and dismissing the defendant. It is claimed, among other assignments, that the act denies due process and equal protection of law and is void for indefiniteness.

The act is entitled: "An act providing for the regulation of the use of public highways and of persons, firms, corporations and associations owning, controlling, operating or managing motor vehicles used in the business of transporting persons or property for compensation or hire, as private carriers by motor vehicle, upon the public highways of this state, and prescribing the compensation to be paid for the use of such highways in carrying on such business, providing penalties for the violation of this act and repealing all acts and parts of acts in conflict therewith."

Section 1 defines the terms corporation, person, commission, permit, public highway, motor vehicle and compensation, and provides: "(h) The term 'private carrier by motor vehicle' means every corporation or person, lessee, trustee, receiver or trustee appointed by any court whatsoever, other than motor vehicle carriers as defined by Section 1 (d) of Chapter 134 of the Session Laws of Colorado for the year 1927, as amended, owning, operating, controlling or managing any motor vehicle in the business of transporting persons or property for compensation over any public highway of this state between fixed points or over established routes, or otherwise, by contract or otherwise, and shall include all persons or corporations operating their own motor vehicles for the transportation of their own property, goods or merchandise, who charge or collect from the consignee, purchaser or recipient of such property, goods or mer-

chandise, compensation for transporting or delivering the same.

"Private carriers by motor vehicle are hereby divided into two classes for the purposes of this Act, which shall be as follows:

"(1) Class A Private Carriers shall embrace all private carriers by motor vehicle operating over substantially regular or established routes or between substantially fixed termini; or to a fixed terminus or termini;

"(2) Class B Private Carriers shall embrace all private carriers by motor vehicle who do not operate over substantially regular or established routes or between substantially fixed termini."

Section 2 forbids the transportation of persons or property for compensation except in accordance "with the provisions of this Act or of Chapter 134 of the Session Laws of Colorado for the year 1927, as amended." (Chapter 121, Session Laws of 1931, commonly called the "Common Carrier Act.")

Section 3 provides: "It shall be unlawful for any private carrier by motor vehicle, as defined in Section 1 of this Act, to engage in or transact the business of transporting passengers, freight, merchandise or other property over the public highways of the State of Colorado, without first having obtained a permit therefor from the Public Utilities Commission of the State of Colorado, and for the purpose of protecting the public highways of the State of Colorado and safeguarding the use of the same by the traveling public, the Commission is hereby vested with the authority to issue a permit to a private carrier by motor vehicle and may attach to such permit and to the exercise of the rights granted thereunder, such terms and conditions as are reasonable.

"* * * nor shall anything herein contained be construed or applied so as to compel a private carrier by motor vehicle to be or become a common carrier, or to subject such private carrier by motor vehicle to the laws

or the rules and regulations applicable to a common carrier."

Section 4 authorizes the sale of permits only upon approval of the commission.

Section 5 provides: "In addition to the regular license fees or taxes imposed upon motor vehicles there shall be assessed against and collected from every Class A private carrier by motor vehicle the following tax as compensation for the use of the public highways, and for the maintenance, repair and reconstruction of the same.

"(a) For freight or express service of any kind, five (5) mills per ton mile. For the purpose of determining the number of ton miles traveled, the actual weight in pounds of the revenue cargo carried by each motor vehicle unit (trailers to be included) shall be multiplied by the number of miles carried, the sum of which shall be divided by 2,000.

"(b) For passenger service of any kind, one mill per passenger mile for all revenue business. To determine the passenger miles, multiply the actual number of revenue passengers carried by each motor vehicle by the number of miles carried."

Sections 6 and 7 cover the method of keeping and making reports of the business done by Class A private carriers.

Section 8 provides: "In addition to the regular license fees or taxes imposed upon motor vehicles, there shall be assessed against and collected from every Class B Private Carrier, as compensation for the use of the public highways and for the maintenance, repair and reconstruction of the same, an annual permit fee of Fifty Dollars ($50.00) for each of such trucks and trailers having a carrying capacity of one ton, or less, and the sum of Twenty-five Dollars ($25.00) for every one-half ton, or fraction thereof, of carrying capacity in excess of said one ton. * * *"

Section 9 provides for an increase of 25 per cent in the rates for motor vehicles using solid tires.

Section 10 and 11 are procedural.

Section 12 authorizes the commission to enforce the collection of all taxes and penalties; provides that 10 per cent of such sums shall be paid to the commission for costs of administration and enforcement; 75 per cent of the balance to be paid to the credit of the state highway fund and the remaining 25 per cent to be apportioned on the first of January and the first of July among the various counties of the state "according to the mileage of State Routes and State Highways as established by the State Highway Department."

Section 13 makes the violation of any provision of the act a misdemeanor.

Section 14 authorizes the appointment of necessary clerks and inspectors.

Section 15 provides for a filing fee of $5.00 upon application for a permit and a filing fee of $5.00 for the transfer of a permit in addition to the fees and licenses provided in the act.

Section 16 requires the carrier to furnish a liability insurance policy or surety bond "to adequately safeguard the public interest."

Section 17 authorizes the revocation of a permit upon hearing.

Section 18 makes the failure to comply with any of the terms of the act a misdemeanor punishable by "a fine of not exceeding One Thousand Dollars ($1,000.00) or by imprisonment in the county jail not to exceed six (6) months, or both, in the discretion of the court."

Section 19 clothes the district or county court with jurisdiction "in all matters arising under this act," and further provides that it shall be the duty of the district attorney to prosecute.

Section 20 authorizes suits by the attorney general or district attorney against violators or threatened violators "either by mandamus or injunction." It also authorizes: "Any person or corporation injured by such non-compliance of any private carrier by motor vehicle with

the provisions of this Act or of any other provisions of the law or orders, decisions, rules, directions or requirements of the Commission, may apply to any court of competent jurisdiction for the enforcement thereof, and the court shall have jurisdiction to enforce obedience thereto by writ of injunction or other proper process, * * * ."

Section 21 provides: "Nothing in this Act shall be construed as prohibiting the transportation of farm produce to market or supplies to the farm or to the vicinity of the farm by any person chiefly engaged in farming, or to the transportation of children to and from school."

The remaining sections 22 to 27 need not be noted.

Section 1 (d) of the public carrier act, chapter 134 of the Session Laws of 1927, provides: "(d) The term 'motor vehicle carrier' when used in this act means and includes every corporation, person, firm, association of persons, lessee, trustee, receiver or trustee appointed by any court, owning, controlling, operating or managing any motor vehicle used in serving the public in the business of transporting persons or property for compensation over any public highway between fixed points or over established routes, or otherwise, who indiscriminately accept, discharge and lay down either passengers, freight or express, or who hold themselves out for such purpose by advertising or otherwise."

Chapter 121 of the Session Laws of 1931, the amended public carrier act, provides: "Section 1. That sub-section (d) of Section 1 of Chapter 134 of the Session Laws of the State of Colorado for the year 1927, be and the same is hereby amended to read as follows:

"(d) The term 'motor vehicle carrier,' when used in this Act, means and includes every corporation, person, firm, association of persons, lessee, trustee, receiver or trustee appointed by any Court whatsoever, owning, controlling, operating or managing any motor vehicle used in serving the public in the business of the transportation of persons or property for compensation as a com-

mon carrier over any public highway between fixed points or over established routes, or otherwise, whether such business or transportation is engaged in or transacted by contract, or otherwise.

"The fact that any such person carries on his said operations:

"a. In whole or in part between substantially fixed points or over established routes; or

"b. Under contracts with more than one person or corporation; or

"c. By making repeated or periodical trips, shall be prima facie evidence that such person is a motor vehicle carrier hereunder."

It should be noted that the 1931 act differs from the 1927 statute in the following particulars: "whatsoever" is added after the word "Court" in the fourth line of section (d); "as a common carrier" is added after the word "compensation" in the eighth line and the last clause "whether such business or transportation is engaged in or transacted by contract, or otherwise" is substituted for "who indiscriminately accept, discharge and lay down either passengers, freight or express, or who hold themselves out for such purpose by advertising or otherwise." Paragraphs a, b and c are new.

Apparently it was the intention of the legislature, in adopting these changes, to more effectually regulate motor vehicle public carriers and to make evasion of the law more difficult.

Counsel argue that chapter 120, Session Laws of 1931, denies a private carrier the right to operate as such and forces him to operate, if at all, as a common carrier, thus denying him due process of law. In support thereof they cite: *Truax v. Raich*, 239 U. S. 33, 36 Sup. Ct. 7, 60 L. Ed. 131; *Buck v. Kuykendall*, 267 U. S. 307, 45 Sup. Ct. 324, 69 L. Ed. 623; *Terminal Taxicab Co. v. Kutz*, 241 U. S. 252, 36 Sup. Ct. 583, 60 L. Ed. 984; *Frost v. R. R. Comm. of California*, 271 U. S. 583, 46 Sup. Ct. 605, 70 L. Ed. 1101; *Tyson & Brother v. Banton*, 273 U. S. 418, 47 Sup.

Ct. 426, 71 L. Ed. 897; 44 Harvard Law Review, 530; *Smith v. Cahoon*, 283 U. S. 553, 51 Sup. Ct. 582, 75 L. Ed. 1264; *Stephenson v. Binford*, 53 F. (2d) 509.

After the reply brief was filed and on December 5, 1932, the Supreme Court of the United States affirmed the judgment of the United States district court for the Southern district of Texas in the case of *Stephenson v. Binford, supra*, 53 Sup. Ct. 181. This decision is here pertinent, controlling and conclusively determines counsels' contention adversely. Therein the various arguments presented by counsel here, are considered and the cases noted supra, and cited in support thereof, differentiated. Therein it appears that one Stephenson and interveners, who were engaged in transporting freight by means of motor trucks over the highways of Texas for hire under private contracts, sought to enjoin the enforcement of a Texas statute regulating motor carriers, Vernon's Ann. Civ. St. Tex., art. 911b.

The opinion sets forth the salient provisions of the act as follows: ''Section 3 provides that no common carrier of property for compensation or hire shall operate over the highways of the state without first obtaining a certificate of public convenience and necessity, and that no contract carrier shall thus operate without a permit so to do.''

''Section 6 (a) provides that no motor carrier now operating as a contract carrier, or hereafter desiring to engage in so doing, shall operate until it shall have received a permit from the Railroad Commission which shall not be issued until the applicant has complied with the requirements of the act.''

After setting forth other provisions of the Texas act which we do not deem necessary to here include, the opinion continues: ''The case was heard by a statutory court consisting of three judges, under sec. 266 of the Judicial Code, U. S. C., Title 28, sec. 380, upon the pleadings and affidavits and other evidence. That court delivered an opinion and denied an interlocutory injunction,

53 F. (2d) 509. Later, and upon final hearing, the court made findings of fact and entered a decree denying a permanent injunction. The case comes here by appeal from that decree.

"Appellants assail the statute upon the following grounds. (1) That as applied to appellants, all of whom are private contract carriers, the result of the statute is to compel them to dedicate their property to the quasi-public use of public transportation before they can operate their motors over the highways, and thus to take their property for public use without adequate compensation and to deprive them of their property without due process of law. In other words, the alleged effect of the statute is to convert the private carriers into common carriers by legislative fiat. (2) That the business of appellants is not affected with a public interest, and the provisions of the statute so declaring in terms, or in effect, constitute an attempt to deprive appellants of their property without due process of law, and to abrogate their right of private contract. (3) That the statute by requiring appellants to obtain a permit in the nature of a certificate of public convenience and necessity subjects them to other regulations before they can lawfully operate upon the highways, which regulations are not imposed upon other private carriers similarly situated, and thereby appellants are denied the equal protection of the laws. (4) That other regulations to which appellants are subjected are not made applicable to persons using the highways in transportation of their own commodities under substantially similar conditions, and thereby appellants are denied the equal protection of the laws.

\* \* \*

"First. It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes; and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condi-

184

tion as it sees fit. *Packard v. Banton,* 264 U. S. 140, 144 and cases cited; *Frost Trucking Co. v. R. R. Com.,* 271 U. S. 583, 592-593; *Hodge Co. v. Cincinnati,* 284 U. S. 335, 337; *Johnson Transfer & Freight Lines v. Perry,* 47 F. (2d) 900, 902; *Southern Motorways v. Perry,* 39 F. (2d) 145, 147; *People's Transit Co. v. Henshaw,* 20 F. (2d) 87, 89; *Weksler v. Collins,* 317 Ill. 132, 138-139; *Motor Coaches v. Public Utilities,* 125 Me. 63, 65.

"* * * in the light of the broad general rule just stated, the statute may be construed and sustained as a constitutional exercise of the legislative power to regulate the use of the state highways. Provisions of the statute assailed on the ground that they are not highway regulations and violate the due process of law clause are: the requirement that the private contract carrier before engaging in business must obtain a permit upon considerations relating to the effect of their competition upon existing common carriers * * * and the requirement, as appellants interpret the statute, that such private carriers must furnish cargo insurance policies and bonds.

"We are of opinion that neither by specific provision or provisions, nor by the statute considered as a whole, is there an attempt to convert private contract carriers by motor into common carriers. Certainly, the statute does not say so. Common carriers by motor and private contract carriers are classified separately and subjected to distinctly separate provisions. By sec. 1 (h), the contract carrier is defined as 'any motor carrier * * * transporting property for compensation or hire over any highway in this state other than as a common carrier.' It is difficult to see how the legislature could more clearly have evinced an intention to avoid an attempt to convert the contract carrier into a common carrier. It is true that the regulations imposed upon the two classes are in some instances similar if not identical; but they are imposed upon each class considered by itself, and it does not follow that regulations appropriately imposed upon

the business of a common carrier, may not also be appropriate to the business of a contract carrier.

"Appellants, in support of their contention, rely upon prior decisions of this court; but there is nothing in any of them as a brief review will disclose, which requires us to hold that the legislation here under review compels private contract carriers to assume the duties and obligations of common carriers, or interferes with their freedom to limit their' business to that of carrying under private contracts as they have been wont to do.''

The court then discusses and distinguishes *Michigan Commission v. Duke*, 266 U. S. 570, 45 Sup. Ct. 191, 69 L. Ed. 445; *Buck v. Kuykendall*, 267 U. S. 307; *Bush Co. v. Maloy*, 267 U. S. 317, 45 Sup. Ct. 326, 69 L. Ed. 627; *Frost v. R. R. Comm. of California*, 271 U. S. 583, and *Smith v. Cahoon*, 283 U. S. 553. In considering the last case the court states:

"*Smith v. Cahoon*, 283 U. S. 553, dealt with a Florida statute indiscriminately applying to all who operated motor vehicles for compensation or as common carriers over public highways, and prohibiting such operation without a certificate of public convenience and necessity, application for which was to be accompanied by a schedule of tariffs. No certificate was valid unless a bond were given by the applicant for protection against injuries resulting from negligence, and for the protection of persons and property carried. The railroad Commission was vested with authority to fix or approve rates, regulate service, prescribe methods of keeping accounts, etc. Schedules of rates were to be open to the public, and all alterations in tariffs were under the commission's control. The violation of any provision of the act was made a misdemeanor punishable by fine or imprisonment or by both. This court held that since the statute affixed the same conditions to all who applied for certificates, and embraced in those conditions a scheme of supervision and control which constitutionally could be applied only to common carriers, a private carrier for hire could

not constitutionally be arrested under it for failure to procure a certificate or pay the tax required by the act. It further held that if the statute were regarded as intended to afford one constitutional scheme for common carriers and another for private carriers, it failed to define the obligations of private carriers with the certainty required of criminal statutes, and was, therefore void; and that this defect was not removed by a decision of the state court declaring the provisions separable and that only those legally applicable to private carriers were intended to apply to them, without also deciding which provisions were so applicable. 'No separate scheme of regulation,' we said (p. 563), 'can be discerned in the terms of the Act with respect to those considerations of safety and proper operation affecting the use of highways which may appropriately relate to private carriers as well as to common carriers.'

"The vice of the statute was that all carriers for hire, whether public or private, were put upon the same footing by explicit provisions which could not be severed so as to afford one valid scheme for common carriers and another for private carriers, with the result that until the separability of these provisions should be determined by competent authority, they were void for uncertainty. In the Texas statute no such uncertainty exists. The provisions intended to be applicable to contract carriers are distinctly set forth and separately stated, plainly leaving for determination only the question whether such provisions, or any of them, are invalid as so applied. *Continental Baking Co. v. Woodring*, 286 U. S. 352, 364.

"We come, then, to consider the challenged provisions of the statute under review, in the light of their exclusive relation to contract carriers, unembarrassed by any previous ruling of this court."

The court then recites the findings of fact showing the increased and increasing use of the highways by private trucking for hire and the damage incident thereto and the imperative necessity of regulations thereof.

The opinion continues:

"These and other findings and the evidence contained in the record conclusively show that during recent years the unregulated use of the highways of the state by a vast and constantly growing number of private contract carrier's has had the effect of greatly decreasing the freight which would be carried by railroads within the state, and, in consequence, adding to the burden upon the highways. Certainly, the removal or amelioration of that burden, with its resulting injury to the highways, interference with their primary use, danger and inconvenience, is a legitimate subject for the exercise of the state legislative power. And that this was one of the chief ends sought to be accomplished by the provisions in question, the record amply establishes.

\* \* \*

"Turning our attention then to the provision for permits, it is to be observed that the requirement is not that the private contract carrier shall obtain a certificate of public convenience and necessity, but that he shall obtain a permit, the issue of which is made dependent upon the condition that the efficiency of common carrier service then adequately serving the same territory shall not be impaired.

\* \* \*

"Here the circumstance which justifies what otherwise might be an unconstitutional interference with the freedom of private contract is that the contract calls for a service, the performance of which contemplates the use of facilities belonging to the state; and it would be strange doctrine which, while recognizing the power of the state to regulate the use itself, would deny its power to regulate the contract so far as it contemplates the use. 'Contracts which relate to the use of the highways must be deemed to have been made in contemplation of the regulatory authority of the State.' *Sproles v. Binford, supra,* at pp. 390-391, and authorities cited. The principle that Congress may regulate private contracts when-

ever reasonably necessary to effect any of the great purposes for which the national government was created, *Highland v. Russell Car Co., supra,* at p. 261, applies to a state under like circumstances.''

After again differentiating the Frost Trucking case, *supra,* the opinion continues:

''The Texas statute, on the contrary, rests definitely upon the policy of highway conservation, and the provision now under review is governed by the same principle as that which recognizes the authority of a state to prescribe the conditions upon which it will permit public work to be done on its behalf.''

The court affirmed the decree of the lower court denying an injunction against the enforcement of the act.

It is urged that section 21 of chapter 120, Session Laws of 1931, violates the constitutional guaranty of equal protection of the law. In this connection, counsel cite *Smith v. Cahoon, supra,* and *Louis v. Boynton,* 53 F. (2d) 471. *Smith v. Cahoon* does not support counsels' contention. There the Florida statute which regulated ''any motor-propelled vehicle * * * used in the business of transporting persons or property for compensation or as a common carrier'' exempted ''any transportation company engaged exclusively in the transporting agricultural, horticultural, dairy or other farm products and fresh and Salt Fish and Oysters and Shrimp from the point of production to the assembling or shipping point enroute to primary market or to motor vehicles used exclusively in transporting or delivering dairy products.'' The court held such exemption to be unjustifiable and arbitrary, stating (p. 566), ''The point with respect to this discrimination is not that a distinction is made between common carriers and private carriers, but between private carriers themselves, although they are alike engaged in transporting property for compensation over public highways between fixed termini or over a regular route.

"'* * * This is a matter of grave concern as the highways become increasingly crowded with motor vehicles, and we entertain no doubt of the power of the State to insist upon suitable protection for the public against injuries through the operations on its highways of carriers for hire, whether they are common carriers or private carriers. But in establishing such a regulation, there does not appear to be the slightest justification for making a distinction between those who carry for hire farm products, or milk or butter, or fish or oysters, and those who carry for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities.''

Chapter 120 does not attempt to include one class of motor vehicle operators for hire and exclude another class also transporting for hire, it includes all persons operating privately for hire.

In *Louis v. Boynton, supra,* an injunction was sought against the enforcement of two Kansas statutes. Chapter 236, Session Laws of Kansas, 1931, and chapter 244, Session Laws of Kansas, 1931, on the ground that they were unconstitutional. The court denied the injunction and dismissed the complaint as to chapter 236 and granted permanent injunction as to chapter 244.

Chapter 236, section 2, provided: "That this act shall not apply to motor carriers who shall operate wholly within any city or village of this state or private motor carriers who operate within a radius of twenty-five miles beyond the corporate limits of such city, or any village, nor to the transportation of live stock and farm products to market by the owner thereof or supplies for his own use in his own motor vehicle; or to the transportation of children to and from school.''

In holding the act constitutional notwithstanding such exemption, the court states:

"Private carriers make only an incidental use of the public highways and do not transport persons or property thereon for hire as a business. Because of this difference, we think all private motor carriers could prop-

erly be placed in a separate class and exempted from the tax. If this be true, there is no valid objection to an exemption of private motor carriers who operate only within a radius of 25 miles of the corporate limits of a city or village. The same is true of a person transporting his own livestock, farm products or supplies. There may be just cause for a non-exempted private carrier to object to the exemptions in section 2, but we see no grounds for objection by a carrier who transports property or passengers for hire. A public carrier uses the highways as a business and may be justly required to pay more than the ordinary tax exaction for such use. On the other hand, a private carrier makes only an incidental use of the highways and sufficiently compensates therefor by payment of the ordinary tax exactions.

"A tax on public carriers engaged in transporting school children would simply be added to the cost of transportation. This is paid for by the school districts, which are instrumentalities of the state. If the tax were collected it would only be taken from one department of the state government and paid by another. This, in our opinion, affords a just ground for exempting school bus transportation from the tax.

\* \* \*

"It is our opinion, however, that this section does not intend such security to protect passengers or cargoes carried, but to protect third persons from injuries to their persons or property, and to guarantee compensation therefor if such injury ensues. So construed, such requirement is valid. 42 C. J. p. 710, sec. 161; *In re Opinion of the Justices,* 81 N. H. 566, 129 A. 117, 39 A. L. R. 1023.

\* \* \*

"Section 2 also exempts from the provisions of section 21 certain private motor carriers. There is a distinction between those who make an incidental use of the highways for private purposes and those who carry persons or the property of another for hire. Generally speaking,

the use by the former is incidental to their principal business or vocation, while the use by the latter is continuous and habitual. It may be that a private carrier when he does use the highway is just as liable to be negligent as is the carrier for hire, but, since the use by the latter is habitual and continual, it probably affords a sufficient basis for the classification.

\* \* \*

"We conclude that \* \* \* the exemption provisions of section 2 are based upon legitimate classifications, and that the act does not violate the equal protection clause of the federal Constitution."

Counsel in their brief do not discuss this portion of the opinion, but base their contention that the act here questioned is unconstitutional upon the ruling of the court holding chapter 244 unconstitutional. In this connection the court stated:

"Coming now to Chapter 244, supra, we find that it is an act designed to promote the public safety, and to prevent the use of vehicles which, because of size, character of tires and weight, may be detrimental and injurious to the highways. \* \* \* This act does not resort to classification and impose certain restrictions as to safety upon common carriers, public carriers, and contract carriers for hire, who use the highways as an avenue over which to transport persons or property for hire as a business and different ones for those who use such highways only incidentally, but it imposes similar restrictions upon all users of highways except those operating private passenger automobiles and certain persons who come within the proviso of section 1. This proviso reads: 'The provisions of this act shall not apply to the operation or moving of farm machinery or equipment, or the delivery of farm products to or from markets by the producer on any of the roads or highways in the state.'

\* \* \*

"The exemption of the movement of farm products by the producer thereof presents a more serious question.

As heretofore stated, the general provisions of this act, which are designed to promote the public safety, cover every conceivable use of the public highways by motor vehicles, except private passenger vehicles, whether those vehicles are used by carriers for hire, contract carriers, private carriers, or by persons who casually, or incidentally, or occasionally use the highways. Within this general provision we find one class, the farmer or the producer of farm products, by virtue of the last exemption in Section 1, placed in a favored position. We are of the opinion that there is no rational basis for this classification bearing a reasonable and just relation to the objects of this legislation.

\* \* \*

"We conclude that the exemption with respect to the movement of farm products by the producer thereof violates the equal protection clause of the federal Constitution and renders the act unconstitutional."

Thus it appears that this decision by the federal district court of our district not only does not sustain counsels' contention, but is excellent authority for our conclusion that the questioned act does not violate the constitutional guarantee of equal protection of the law.

Section 21 exempts the "transportation of farm produce to market or supplies to the farm or to the vicinity of the farm by any person chiefly engaged in farming." We construe this to mean, and it was the evident intention of the legislature, that a farmer was not to be penalized when he transported, without compensation, his own farm produce to market or so transported his own supplies to his farm.

If we were to hold that the legislature intended to exempt farmers as a class and permit them to transport for compensation farm products of another to market and thus truck the supplies of another, such conclusion might necessitate a determination that the act was bad for inequality. If we were to assume this construc-

tion to be tenable, it would be our duty, under the rule that where two constructions are possible the one upholding the validity of the law should be adopted, to adhere to the interpretation heretofore given.

██ The act only purports to cover transportation by private carrier of passengers and freight for compensation. It does not seek to regulate gratuitous carriage. Hence, that part of section 21 referring to transportation of farm products and supplies could well have been omitted without changing the scope or effect of the act.

██ Counsel argue that chapter 120 when construed in connection with chapter 121 is void for uncertainty because it cannot be definitely determined what acts bring one within the various classifications. This argument is based largely upon the erroneous assumption that one who transports goods in the manner described in a, b and c, chapter 121, Session Laws of 1931, is not only prima facie a public motor vehicle carrier, but one in fact, and that there is no distinction between a Class A private carrier and a common carrier.

Chapter 120 does not force a private carrier for hire to become a common carrier; on the contrary it specifically provides, ''nor shall anything herein contained be construed or applied so as to compel a private carrier by motor vehicle to be or become a common carrier, or to subject such private carrier by motor vehicle to the laws or the rules and regulations applicable to a common carrier.'' Section 3.

Chapter 120 when construed in connection with section 1 a, b and c of chapter 121, does not make private carriers common carriers. Aside from these three paragraphs and except in verbiage, the definition of a motor vehicle public carrier in the 1927 act is practically the same as in the 1931 act. The former defines motor vehicle carriers as those ''operating or managing any motor vehicle used in serving the public in the business of transporting persons or property for compensation * * *

who indiscriminately accept, discharge and lay down either passengers, freight or express or who hold themselves out for such purpose by advertising or otherwise.'' The latter defines motor vehicle carriers to be those owning or operating ''any motor vehicle used in serving the public in the business of transportation of persons or property for compensation *as a common carrier* \* \* \* by contract or otherwise.''

 A common carrier is one whose business occupation or regular calling is to carry chattels for all persons who may choose to employ and remunerate him. *Dwight v. Brewster,* 1 Pick. (Mass.) 50.

In harmony with the foregoing definition it has been universally recognized that to be a common carrier one must indiscriminately accept and deliver freight or passengers for hire. *Greeley T. Co. v. People,* 79 Colo. 307, 245 Pac. 720. Hence, although the 1927 act uses the expression ''who indiscriminately accept, discharge and lay down either passengers, freight or express'' and the 1931 act provides ''transportation of persons or property for compensation as a common carrier,'' the effect and interpretation must be the same. The addition of a, b and c in the 1931 act does not change such requirement, but merely shifts the burden upon the carrier to prove that he is not attempting to evade the law and is not operating as a common carrier.

Such interpretation, necessary, reasonable and proper, as we view it, immediately dispels all claimed confusion in the law and its enforcement. Public motor vehicle carriers are clearly and reasonably differentiated from private motor vehicle carriers for hire and also their several statutory duties and obligations. The various classifications so made are reasonable and not arbitrary. If these acts be so administered as to deny any motor vehicle operator his rights under the law, the courts are always open to redress such wrongs. But such possibilities cannot properly be urged as reasons for declaring the questioned act unconstitutional.

We conclude that chapter 120, Session Laws of 1931, in all controverted respects, is constitutional; and that the evidence amply supports the judgment.

Judgment affirmed.

MR. JUSTICE BOUCK not participating.