No. 13,178.

PEOPLE *v.* MONTGOMERY.

(19 P. [2d] 205)

Decided January 30, 1933.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. COLIN A. SMITH, Assistant, Mr. PAUL P. PROSSER, Attorney General, Mr. RICHARD E. CONOUR, Assistant, for the people.

Mr. HORACE N. HAWKINS, Mr. PAGE M. BRERETON, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

THIS action was brought by the attorney general at the request of the Public Utilities Commission to enjoin W. L. Montgomery from hauling for sale at a profit his own coal in his own motor truck over the public highways of the state from the place of purchase to the place of delivery upon sale unless he secure a permit to operate as a private carrier and otherwise comply with chapter 121, Session Laws of 1931.

This is admittedly a test case brought for the purpose of determining whether one so engaged is subject to the provisions of the private motor vehicle carrier act, chapter 120, Session Laws of 1931, and if so whether certain provisions of the act are unconstitutional. This case should be considered in connection with *Bushnell v. Peo-*

*ple,* decided January 30, 1933, 92 Colo. 174, 19 P. (2d) 197, which also involves the constitutionality of this statute.

A stipulation supplemented by other evidence was introduced. This discloses that Montgomery is sales manager for the Louisville-Lafayette Coal Company and at the time the suit was brought was engaged personally in the coal business, buying coal from the so-called Hi-Way mine of the Louisville-Lafayette Coal Company and other mines and selling the coal at retail; that in the course of his business he operated a Ford truck which hauled coal on the public highways from the mine to various destinations, including Denver, and other places within a radius of twenty-five to fifty miles of the mine, that he paid $4.25 a ton for lump coal at the mine, that he sells the coal at retail in Denver for approximately $6.25 per ton, and that he had sold coal at retail in Greeley for $7.50 per ton, and that he sells coal at Golden for $6.25 per ton, and at Boulder for $6.00, that his profit is $2.00 a ton on lump hauled to Denver and, of course, proportionate profit on lump hauled elsewhere.

It does not appear when and where the sales of the coal so transported were made; nor does it appear that Montgomery charged or received either directly or indirectly any identifiable or specific amount to cover the cost of transportation; nor does it appear that the purchasers either expressly or impliedly agreed to pay any amount for the transportation thereof.

The lower court found the equities in favor of Montgomery and entered judgment of dismissal, to review which this writ is prosecuted.

Our attention is especially directed to the claimed unconstitutionality of that portion of subdivision (h) of section 1 which provides: "* * * and shall include all persons or corporations operating their own motor vehicles for the transportation of their own property, goods or merchandise, who charge or collect from the consignee, purchaser or recipient of such property, goods or

merchandise, compensation for transporting or delivering the same.''

■ In order to question the constitutionality of this act one must be affected by its provisions. In view of the widespread gravity and importance of the questions' here presented and the further fact that the legislature now in session may be desirous of enacting other legislation in connection with the use of the public highways of the state, and although there is a grave question as to whether under the stipulation and evidence, Montgomery comes within the act, we shall assume that he is in a position to question the constitutionality thereof.

■ It is urged that that portion of subsection (h) of section 1, chapter 120, Session Laws of 1931, above quoted, is unconstitutional because the title of the act is insufficient to cover the character of transportation therein set forth.

The act is entitled: ''An act providing for the regulation of the use of public highways and of persons, firms, corporations and associations owning, controlling, operating or managing motor vehicles used in the business of transporting persons or property for compensation or hire, as private carriers by motor vehicle, upon the public highways of this state, and prescribing the compensation to be paid for the use of such highways in carrying on such business, providing penalties for the violation of this act and repealing all acts and parts of acts in conflict therewith.''

Section 1 (g) provides: ''The term 'compensation' as used in this Act shall mean money or property of value charged and/or received, or to be charged and/or received, whether directly or indirectly, as compensation for the service rendered of transporting over any of the public highways of Colorado in motor vehicles by a private carrier by motor vehicle, as the term is defined in this Act, any person, property, article or thing.''

Section 1 (h) provides: ''The term 'private carrier by motor vehicle' means every corporation or person, les-

see, trustee, receiver or trustee appointed by any court whatsoever, other than motor vehicle carriers as defined by Section 1 (d) of Chapter 134 of the Session Laws of Colorado for the year 1927, as amended, owning, operating, controlling or managing any motor vehicle in the business of transporting persons or property for compensation over any public highway of this State between fixed points or over established routes, or otherwise, by contract or otherwise, and shall include all persons or corporations operating their own motor vehicles for the transportation of their own property, goods or merchandise, who charge or collect from the consignee, purchaser or recipient of such property, goods or merchandise, compensation for transporting or delivering the same.''

Section 3 provides: ''It shall be unlawful for any private carrier by motor vehicle, as defined in Section 1 of this Act, to engage in or transact the business of transporting passengers, freight, merchandise or other property over the public highways of the State of Colorado, without first having obtained a permit therefor from the Public Utilities Commission of the State of Colorado, * * * .''

It would seem to us unreasonable to say that anyone, carefully considering this title, would be put on notice that one who hauls over the public highways his own property in his own motor vehicle and sells the same at a profit is subject to regulation under the act. The ordinary and proper interpretation of the words in the title ''used in the business of transporting persons or property for compensation or hire'' contemplates only the transportation of the person or property of another. The words ''compensation'' and ''hire'' in the title were evidently intended to be considered as synonymous. In defining a ''private carrier by motor vehicle,'' the expression ''in the business of transporting persons or property for compensation'' is used; the word ''hire'' is not included. In fact, nowhere in the entire body of the act is the word ''hire'' found. Therefore, the title

of the act appears not to be broad enough to include one who transports his own goods in his own vehicle from one place to another on the public highway and sells the same for profit.

In *Murphy v. Standard Oil Company,* 49 S. D. 197, 207 N. W. 92, it was held that an act, the title of which made no reference to a carrier other than for hire, was unconstitutional as to those carriers not operating for hire. In considering this question the court stated at page 199:

"It is next urged by defendant that, as applied to it, the subject of the act is not expressed in the title and that therefore the act is unconstitutional and void. The title to the act is as follows:

" 'An act entitled an act providing for the supervision, regulation and control of the transportation by motor vehicle of persons and property for hire upon the public highways of this state and prescribing the compensation to be paid for the use of such highways.'

"This appears to be a perfectly good title, but restricts the scope of the act to the supervision, regulation, and control of motor vehicles for hire.

"The law defines 'motor carrier' to be any 'corporation or person * * * operating any motor vehicle upon any public highway in this state for the transportation of persons or property for hire, or for distributing, delivering or collecting oils or oil products, goods, wares or merchandise, except such motor carriers operating exclusively within the limits of a municipality. Provided,' etc. * * *

"The words 'for hire' are defined to mean, 'for remuneration of any kind, paid or promised, either directly or indirectly.' "

After reviewing the evidence, the court states: "The finding that defendant is a carrier for hire is a conclusion of law wholly unsupported by any proper finding of fact or any evidence in the record. In order to support the conclusion that defendant is a carrier for hire, there

must be evidence showing that defendant is equipped for carrying persons or property, and that it is engaged in carrying or offers to carry persons or property other than itself or its own property for a compensation in some form. The phrase 'carry for hire,' necessarily implies a contractual relation between the two parties, and the Legislature cannot, by mere legislative fiat, make a party a carrier for hire who never carries or offers to carry anything but himself or his own property, any more than it can make black white or white black. A person cannot hire himself nor pay himself.

"Chapter 224, Laws 1925, while differently worded, is closely modeled after the Iowa law (chapter 97, Laws 1923, amended by chapter 2, Laws Ex. Sess. 1924). That law was under consideration by the Iowa court in State v. Manhattan Oil Co., 199 Iowa 1213, 203 N. W. 301. In that case the court speaking of the title to the act, says:

" 'The title makes no reference to motor carriers except those engaged in the transportation of persons or property for hire over the public highways of the state. No reference is made in the title to motor carriers not for hire, of which the defendant is one, and therefore, as to the defendant, the act is void.'

"That is equally true in this case as applied to chapter 224, Laws 1925. The title makes no reference to carriers other than carriers for hire, and even the definition of the phrase 'for hire' contained in the act is not broad enough to include the operations of defendant as shown by the evidence. The law is therefore void as to such operations."

The Iowa case *(State v. Manhattan Oil Co.,* 199 Iowa 1213, 203 N. W. 301) referred to in the foregoing, presented a similar question. In addition to the excerpt therefrom above quoted, the Iowa court states, on page 1216: "The title presents no ambiguity, and there is no reason to invoke any rule of statutory construction. In simple terms the title is limited to 'regulation of persons, either natural or artificial, engaged in the transportation

of persons or property for hire.' No suggestion or mention is made therein that the act attempts to regulate any class of persons operating motor vehicles on the public highways of the state except those who are engaged in such business for hire. Nothing is suggested therein that would call the attention of any legislator or of the public to the fact that the act included provisions essentially different from those indicated by the title. This court has been quite liberal in permitting the inclusion of matters in an act that are not definitely specified in the title; and in effect we have held that the title need not be an index of the details of the act. But it is quite universally recognized that there must be no incongruity between the act and its title.'' (Citing cases.) See also *Griffin v. Murphy,* 51 S. D. 50, 211 N. W. 804 and *Collins-Dietz-Morris Co. v. State Com'n* (Okla.), 7 P. (2d) 123.

The provisions of chapter 120, Session Laws of 1931, are severable. Therefore we may eliminate any portion which may be held unconstitutional and sustain the remainder.

We are constrained to hold that that portion of section 1 (h) above quoted violates section 21, article V, of the Colorado Constitution in that it embraces a subject which is not expressed in the title of the act.

Other constitutional questions here presented are considered and determined in *Bushnell v. People, supra.*

Accordingly the judgment is affirmed.

MR. JUSTICE BOUCK not participating.