Honorable Richard D. Lamm Governor, State of Colorado Executive Chambers State Capitol Denver, Colorado 80203
Dear Governor Lamm:
Our office has reviewed the provisions of H.B. 1610 as finally passed by the general assembly, pursuant to your request for an opinion.
QUESTION PRESENTED AND CONCLUSION
Your request for an attorney general opinion presents this question:
Does the addition of S.B 91 and S.B. 325 to H.B. 1610 violate any section of the Colorado Constitution?
My conclusion is "yes."
ANALYSIS
The title of H.B. 1610 as introduced and as finally passed is "A Bill For An Act Concerning the Fiscal Policy of the State, and Providing for the Elimination and Reduction of Tax Revenues." As the bill initially went through the two houses, it was a tax reduction and elimination bill. However, the conference committee added several sections to the bill relating to the Highway Users Tax Fund and to the Water Conservation Board. In fact, the conference committee simply added two bills onto H.B. 1610.
The first bill added was S.B. 91, "An Act Concerning the Transfer of the Proceeds of Sales and Use Taxes Attributable to Sales or Use of Vehicles and Related Items." This legislation, as amended, became sections 31-36 of H.B. 1610. Prior to being added to H.B. 1610, S.B. 91 had passed the senate, and second reading of the house. It transferred a percentage of the sales tax from the sale of motor vehicles and related items to the Highway Users Tax Fund (HUTF), and allocated these revenues.
The second bill added was S.B. 325, "An Act Concerning Projects of the Colorado Water Conservation Board." This legislation, as amended, became sections 37-41 of H.B. 1610. Prior to being added to H.B. 1610, S.B. 325 had also passed the senate, and second reading of the house. It related to water projects, expanded the types of projects that can be constructed or improved, amended the approval authority of the general assembly, established specific project priorities, and allocated certain sales and use tax revenue to the Water Conservation Board Construction Fund.
Because of these conference committee amendments to H.B. 1610, there are several constitutional problems with the bill as finally passed by the general assembly. These problems stem from article V, section 17 of the Colorado Constitution, the "original purpose rule," and section 21, the "one subject rule" and the "title rule." Each of these constitutional provisions will be considered in the order stated.
Article V, Section 17
 The Original Purpose Rule
Article V, section 17 reads as follows:
 No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose.
The primary purpose of this provision is to prevent the introduction of a bill dealing with a certain subject, which is later amended to relate to an entirely different subject.In Re Amendments of Legislative Bills, 19 Colo. 356,35 P. 917 (1894); People v. Brown, 174 Colo. 513, 485 P.2d 500
(1971).
As the Colorado Supreme Court has stated in discussing article V, section 17:
 Like other constitutional inhibitions upon the exercise of legislative power, it is not intended to unnecessarily embarrass proper legislation . . . .
In Re Amendments, supra, at 358.
The Colorado Supreme Court has said that the original purpose of a bill is to be ascertained from the title, the text of the bill itself as introduced, and the record of the legislative proceedings. See, e.g., People v. Brown,supra, at 524; Gronert v. The People,95 Colo. 508, 509-511, 37 P.2d 396 (1934); In Re Amendments ofLegislative Bills, supra, at 359. These three bills, H.B. 1610, S.B. 91 and S.B. 325 each had a separate and distinct original purpose.
It seems quite clear that the original purpose of H.B. 1610 was to provide for the reduction and elimination of tax revenues. Increasing and allocating funds available for highways was the original purpose of S.B. 91. Increasing funds and establishing priorities for water projects was the original purpose of S.B. 325. It appears that neither the subject matter nor the contents of S.B. 91 or S.B. 325 were discussed as a part of H.B. 1610 when it was first introduced, or when it was discussed on initial passage. It was only when the conference committee decided to add these two bills to H.B. 1610 that their contents were discussed, however, briefly, as a part of H.B. 1610.
S.B. 91 and S.B. 325 did not have the same purpose as the original H.B. 1610, i.e., to reduce and eliminate tax revenues. S.B. 91, or sections 31-36 of H.B. 1610, and S.B. 325, or sections 37-41 of H.B. 1610, relate to entirely different subjects. This is a rare, but clear example of the general assembly grafting one unrelated bill onto another, "without reference to the character or contents of the parent bill."In Re Amendments, at 359.
It is the opinion of this office that the amendments to H.B. 1610, as found in sections 31-41 thereof, result in a change in the original purpose of H.B. 1610, and that article V, section 17
of the Colorado Constitution is thereby violated.
Article V, Section 21
 The One Subject Rule and the Title Rule
Article V, section 21, reads in pertinent part as follows:
 No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title . . . .
This provision includes two requirements: (1) that a bill contain only one subject; and (2) that the one subject be clearly expressed in the title.
Article V, section 21 has been held to have two primary purposes. The first is to prevent surprise and deception to members of the general assembly and the general public. As the Colorado Supreme Court stated in Catron v. Board of CountyCommissioners, 18 Colo. 553, 557-558, 33 P. 513 (1893):
 When, however, each proposed act is confined to a single subject and that subject is clearly expressed in the title, those interested are put upon inquiry when legislation is proposed affecting such subject, without its being necessary for them to examine every bill for the purpose of seeing that nothing objectionable is coiled up within the folds of the measure.
The second major purpose of article V, section 21 is to prevent logrolling, the "joining in the same act (of) disconnected and incongruous matter." In re Breene, 14 Colo. 401, 404,24 P. 3 (1890). As the court in People ex rel.Kellogg v. Fleming, 7 Colo. 230, 232, 3 P. 70 (1883) stated in favorably reviewing decisions of other jurisdictions on provisions similar to article V, section 21:
 the design and purpose of the provision was to prevent the mischief of uniting together, in the same bill, various objects which had no necessary connection with each other . . . .
This provision is mandatory. See, e.g., C. and G.Road Company v. People, 5 Colo. 39 (1879); In reBreene, supra. However, it is also to be liberally construed "so as to avert the evils against which it is aimed and at the same time avoid unnecessarily obstructing legislation." See, e.g., Clare v. People,9 Colo. 122, 10 P. 799 (1886); In re Breene,supra; Catron v. Board of CountyCommissioners, supra.
A. A bill cannot contain more than one subject.
In determining whether a bill contains more than one subject, one looks to the contents of the bill. As the Colorado Supreme Court stated in Harding v. People, 10 Colo. 387, 391-392,15 P. 727 (1887):
 The constitutional inhibition goes to "acts" containing more than one subject. With respect to the title, the only requirement is that it clearly express the subject of the act.
And similarly in Burcher v. People, 41 Colo. 495, 499,93 P. 14 (1907), the court stated:
 Whether the subject matter of section 3 is clearly expressed in the title must be determined by their own contents . . . .
The standards to be used in applying the "one subject rule" are well-established. There can be no union in the act of incongruous matter, having no necessary connection or relation.See, e.g., Harding v. People,supra; Catron v. County Commissioners,supra. The matter treated in the act must be germane, closely allied, relevant and appropriate to the subject as expressed in the title. See, e.g., Dallas v.Redman, 10 Colo. 297, 15 P. 397 (1887); Roark v.People, 79 Colo. 181, 244 P. 909 (1926); Dahlin v.Denver, 97 Colo. 239, 48 P.2d 1013 (1935).
Thus, one looks to the text of the bill to determine the subject, and that subject must be clearly expressed in the title. If an amendment is made, one then determines whether the amendment is germane, relevant and appropriate to the subject as expressed in the title.
 B. The subject of the bill must be clearly expressed in its title.
The Colorado Supreme Court has often stated that particularity is not essential in the title, and that generality is commendable.See, e.g., California Company v. State,141 Colo. 288, 348 P.2d 382 (1959), app. dis'd364 U.S. 285, reh. den. 364 U.S. 897 (1960); Roarkv. People, supra, Catron v. CountyCommissioners, supra.
However, it has also been held that the word "clearly" is to be given full effect. The Colorado Supreme Court emphasized the importance of the word "clearly" in article V, section 21, inIn re Breene, supra, at 406:
 Moreover, we are bound to assume that the word "clearly" was not incorporated into the constitutional provision under consideration by mistake. It appears in but few of the corresponding provisions of other state constitutions — a fact that could hardly have been unobserved by the convention. That this word was advisedly used, and was intended to affect the manner of expressing the subject, we cannot doubt. The matter covered by legislation is to be "clearly," not dubiously or obscurely, indicated by the title. Its relation to the subject must not rest upon a merely possible or doubtful inference. The connection must be so obvious as that ingenious reasoning aided by superior rhetoric will not be necessary to reveal it. Such connection should be within the comprehension of the ordinary intellect as well as the trained legal mind. Nothing unreasonable in this respect is required, however; and a matter is clearly indicated by the title when it is clearly germane to the subject mentioned therein.
(Emphasis original.) Also see People v.Friederich, 67 Colo. 69, 185 P. 657 (1919). The import of this analysis is that a person reading the title of a bill must have some clear and reasonable notice of the contents of the bill.
 C. Analyzing S.B. 91 (sections 31-36 of H.B. 1610) and S.B. 325 (sections 37-41 of H.B. 1610) under article V, section 21.
The issues raised by article V, section 21 are somewhat more difficult than those raised by article V, section 17. The original bill's subject, when looking at the contents, was the reduction and elimination of tax revenue. However, it could be intended that the bill's title, "concerning the fiscal policy of the State, and providing for the elimination and reduction of tax revenues," is considerably broader than the original subject.
Article V, section 21 is to be liberally construed, and the courts give every presumption of validity to an act challenged under this provision.
There are several Colorado cases which involve, as does H.B. 1610, a title embracing both a broad and a specific expression of the subject. Whether the broad or the specific provisions of the title are deemed to be controlling depends upon the facts in each case. For example, in California Company v. Colorado,supra, a title was "An act relating to revenue and taxation, and to amend chapter 175, Session Laws of Colorado 1937, as amended by all subsequent acts." The bill imposed a severance tax, while the 1937 law referred to imposed the graduated income tax. The court upheld the act because it addressed the subject expressed in the title.
Similarly in Clare v. People, supra, the court turned to the broadest subject in the title. In that case, the title involved was "An act to facilitate the recovery of ore taken by theft or trespass, to regulate sale and disposition of the same, and for the better protection of mine owners." The court found that the first two subjects were "fully comprehended within the third," and upheld the act. As the court stated:
 One of the two purposes effectuated by this constitutional provision was to prevent uniting with each other in statutes incongruous matters having no necessary connection or proper relation; and where, as in the case at bar, one general subject be clearly expressed, the addition of subdivisions thereof does not necessarily vitiate the whole title. Of course an instance might exist where it clearly appeared that although the general subject were given in the title, yet the legislature intended to limit legislation under this subject to certain subdivisions thereof specifically mentioned.
(Id. at 126.)
However, an opposite result was reached in People v.Montgomery, 92 Colo. 201, 19 P.2d 205 (1933). The title under review there was "An act providing for the regulation of the use of the public highways and of persons, firms, corporations and associations owning, controlling, operating or managing motor vehicles used in the business of transporting persons or property for compensation or hire, as private carriers by motor vehicle, upon the public highways of this state, and prescribing the compensation to be paid for the use of such highways in carrying on such business, providing penalties for the violation of this act and repealing all acts and parts of acts in conflict therewith."
At issue in People v. Montgomery was a section of the act relating to persons hauling their own property in their own motor vehicles, selling the property for a profit. If one were to follow the holding in Clare v. People, one would expect the court to have found that the subject of the title was "providing for the regulation of the use of the highways," that being the broadest subject in the title.
However, the court did not make this analysis. Rather it looked to the whole title, and focused on the more specific language in the title. The court found that "providing for the regulation of the use of the public highways," the broad title, was not the subject of the act. The court further found that the title wasnot broad enough to include regulation of one who transports his own property in his own vehicle and sells the same for a profit. This section of the act was found to violate article V, section 21. The court found that it would be unreasonable to assume that anyone carefully considering this title would be put on notice as to the full scope of the statute.See also, State v. Dale, 550 P.2d 80 (Ariz. 1976); In re Advisory Opinion, 305 N.E.2d 152
(Ill. 1976).
It is therefore difficult to predict how a court might interpret and analyze the title of H.B. 1610 under article V, section 21.
If the court applied the broad subject test as in Clare v.People, supra, the subject expressed in the title of H.B. 1610 would be "the fiscal policy of the State." The phrase "providing for the reduction and elimination of tax revenues" would be deemed "fully comprehended" in the broader phrase. Under that interpretation, a court might well uphold the transfer of certain sales tax monies to the Highway Users Tax Fund (§ 31) and to the Colorado Water Conservation Board Construction Fund (§ 39) as being germane, relevant and appropriate to the "fiscal policy of the state." More questionable under the broad subject title analysis would be sections 32-36 of H.B. 1610 relating to the allocation of the sales tax revenue transferred to the HUTF. Perhaps the most likely sections to be stricken under this analysis would be sections 37, 38 and 40, relating to water projects. These three sections deal with expanding the types of water projects that can be constructed or improved by the Water Conservation Board, with the information provided in reports to the general assembly, with amending the authority of the general assembly to approve projects and priorities, and with establishing specific project priorities. None of these sections is germane or closely allied to the fiscal policy of the state.
In essence, under a broad title analysis, sections 37, 38 and 40 would appear to violate article V, section 21. Sections 32-36 might also be found improper, although this is less clear. Sections 31 and 39 would most likely be upheld.
If, however, the court applied the specific title analysis as inPeople v. Montgomery, supra, the subject of H.B. 1610 as expressed in the title is "providings for reduction and elimination of tax revenues." The result would be that sections 31-41 (S.B. 91 and S.B. 325) would be found to violate article V, section 21.
SUMMARY
Based on the above analysis, it is the opinion of this office that the addition of S.B. 91 and S.B. 325 to H.B. 1610 violates article V, section 17, Colorado Constitution. Further the addition of S.B. 91 and S.B. 325 to H.B. 1610, at least as to some provisions thereof, also violates article V, section 21, Colorado Constitution.
Very truly yours,
 J.D. MacFARLANE Attorney General
LEGISLATURE LEGISLATIVE BILLS
H.B. 1610 (1979)
Colo. Const. art. V, secs. 17 and 21
EXECUTIVE BRANCH Governor, Office of
The original purpose rule of art. V, § 17 is violated by the addition of sections on allocating sales tax and on funding and prioritizing water projects. Further, art. V, § 21 is also violated by the addition of certain subsections in these sections.