No. 13,927.

PUBLIC UTILITIES COMMISSION ET AL. *v.* MANLEY ET AL.

(60 P. [2d] 913)

Decided July 28, 1936. Rehearing denied September 21, 1936.

Mr. Paul P. Prosser, Attorney General, Mr. Richard E. Conour, Assistant, for plaintiffs in error.

Mr. Sidney B. Hahn, Mr. Bernard E. Madden, Mr. Otto Friedrichs, for defendants in error.

Mr. Marion F. Jones, Mr. Gordon Allott, amici curiae.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

THE parties will be designated herein as in the district court. Plaintiffs are the owners and operators of a coal mine in Fremont county. A part of the product of their mine is sold to customers in and about Canon City and delivered by truck. Some of these consume, while others resell, the coal. In making such deliveries they use the public highways of the state, some of which were constructed and are maintained in whole or in part by the United States government, some of which were constructed and are maintained in whole or in part by the state highway department, and some of which were constructed and are maintained by counties through revenues raised by direct taxation. Plaintiffs instituted an action in the district court of Fremont county to enjoin the Public Utilities Commission, the members thereof individually, its secretary and the Attorney General, as defendants, from enforcing chapter 167, Session Laws 1935, on the ground that it is invalid and void for numerous reasons which they set forth, many of which raise constitutional questions.

The district court overruled a general demurrer to the complaint. The defendants elected to stand on their demurrer; the district court entered judgment against them and granted the injunctive relief prayed. To set aside this judgment the defendants bring the matter here on writ of error.

The district court based its final judgment and decree on three grounds, namely:

1. That said act delegates to the Utilities Commission of Colorado certain legislative functions. 2. That it attempts to confer upon said commission certain judicial functions. 3. That it is unjustly and unreasonably discriminatory in that it does not affect alike all commercial carriers by motor vehicle, but exempts from the operation of the act commercial carriers by motor vehicle of farm products and live stock.

The plaintiffs insist that the matter is before us primarily on the question of whether it was error for the

district court to overrule the demurrer and with this contention we agree. If the district court was in error in overruling the demurrer on the three grounds set out in its decree, the judgment must still stand if it may be upheld on other issues of law raised by the demurrer. Whether other matters sufficient in law to sustain the court's ruling appear requires that we consider all of the issues properly cognizable by the district court and properly presented here for our determination.

Chapter 167, Session Laws of 1935, is an act to regulate the use of the public highways of the state and persons using them in transporting property in furtherance of any commercial enterprise. It fixes the compensation to be paid for the use of such highways for such purposes. The questioned portions of the act will be set forth in haec verba or in substance as we pass upon the various reasons alleged by plaintiffs as showing its invalidity.

In passing it is pertinent to observe that the act is but one of three acts designed to regulate the highways of the state and the use thereof. Chapter 134, Session Laws of 1927, applies to common carriers and imposes a tax of five mills per ton mile as compensation for their use of the highways in the transportation of freight. Chapter 120, Session Laws 1931, applies to private contract carriers for hire and fixes five mills per ton mile as the compensation to be paid by them for the use of the highways in carrying on such a business enterprise. This act was made to apply to persons transporting their own property for sale also, where a transportation charge was included in the selling price but as so applied it was held unconstitutional in *People v. Montgomery,* 92 Colo. 201, 19 P. (2d) 205, due to a defect in the title of the act. The act here under consideration was passed, apparently to supplement chapter 120, supra, as applicable to private carriers for hire which was held constitutional as so applied in *Bushnell v. People,* 92 Colo. 174, 19 P. (2d) 197.

The three acts taken together constitute a regulation of common carriers, private carriers for hire, and those who

transport their own property in furtherance of any commercial enterprise, over the highways of the state, and severally they fix the compensation per ton mile to be paid by each of such classes of carriers for the use of the highways in transporting freight. The three acts are material to the questions here involved as indicative of the general public policy of the state.

The plaintiffs attack the sufficiency of the title of the act under section 21, article V of the state Constitution, the pertinent portion of which is, that "No bill * * * shall be passed containing more than one subject, which shall be clearly expressed in its title." The title of the act in question is as follows: "An act providing for the regulation of the use of public highways and of persons, firms, corporations and associations owning, controlling, operating and managing motor vehicles used in transporting property in the furtherance of any private commercial enterprise, as commercial carriers by motor vehicles, upon the public highways of this state, and prescribing the compensation to be paid for the use of such highways in the furtherance of any private commercial enterprise, providing penalties for violation of this act and repealing all acts and parts of acts in conflict herewith." This title is quite different from the title held insufficient as to carriers of their own property in chapter 120, supra. That title referred only to "persons * * * operating or managing motor vehicles * * * used in the business of transporting * * * property for compensation or hire." Obviously, as we held in *People v. Montgomery, supra,* such a title is not broad enough to include the class of carriers the act here in question was enacted to regulate. We think the title of the act before us is sufficient. We have many times passed upon similar objections, but no good purpose could be served by extended citation of authorities and we content ourselves with quoting what we said in *Driverless Car. Co. v. Armstrong,* 91 Colo. 334, 14 P. (2d) 1098, which states the rule that controls this case: "If legislation in

the body of a statute is germane to the general subject expressed in the title; if it is relevant and appropriate to such subject, or is a necessary incident to the object of the act, as expressed in the title, it does not violate this provision of the Constitution. One test is 'whether the legislation in the body of a bill is upon matters properly connected with its subject, as expressed in its title, or proper to the more full accomplishment of the object so indicated.' In the title, particularity is neither necessary nor desirable; generality is commendable.''

Plaintiffs contend that the act is one for raising revenue, and is void under section 31, article V, of the state Constitution, because it originated in the senate. It provides that not to exceed twenty per cent of the gross revenue shall be used in administration costs and that the remainder shall be divided fifty per cent to the state highway department and fifty per cent to the counties to be apportioned according to the mileage of state highways as laid out by the highway department. In *Ard v. People,* 66 Colo. 480, 182 Pac. 892, a criminal case, in which the defendant was convicted of driving an automobile without a license, the same objection was made. In that case we said: ''The third and last objection urged by the plaintiff in error is that 'The Motor Vehicle Act is an attempt under the police powers of the state to pass a revenue measure.' This objection cannot be sustained. A revenue measure is one which has for its object the levying of taxes in the strict sense of the words. If the principal object is another purpose, the incidental production of revenue growing out of the enforcement of the act will not make it one for raising revenue. *Assurance Co. v. Clayton,* 54 Colo. 256, 130 Pac. 330; *C. B. & Q. R. Co v. School District,* 63 Colo. 159, 165 Pac. 260. The purpose of the registration fees required by the Motor Vehicle Act is not the levying of taxes or the collection of revenue. Such fees are in the nature of a license or toll for the use of the public highways. *Ex parte Hoffert, supra.* In Berry on Automobiles, sec. 91, citing *Kane v. Titus, su-*

*pra,* it is said that the license fee 'is a charge in the nature of compensation for damages done to the roads of the state by driving such machines over them.' In accord with the view above taken, is the case of *Atkins v. State Highway Department, supra,* where it is held that the fact that the proceeds of automobile licenses are used in the construction of roads does not render the license provisions of the motor vehicle law a revenue measure. In this connection, see also *Hendrick v. Maryland,* 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; and *Re Kessler, supra.''*

Under the rule as stated and on the authorities therein cited we hold that the act in question is regulatory in character and not primarily for the raising of revenue and therefore not void because originating in the senate.

 Plaintiffs further contend that the act violated section 3, article X, of the state Constitution, which requires that taxation shall be uniform upon the same class of subjects and shall be levied and collected under general laws; that it violates section 6, article X, of the state Constitution in that it exempts certain classes of property from the tax contrary to the provisions of that section. These contentions are not sound. These sections refer to ad valorem taxes on property. *American Smelting and Refining Co. v. People, ex rel.,* 34 Colo. 240, 82 Pac. 531. In *Altitude Oil Co. v. People,* 70 Colo. 452, 202 Pac. 180, we had under consideration the tax on gasoline used in propelling motor vehicles along the highways. It was contended that this act violated the uniformity clause of the Constitution. In that case we pointed out that the tax ''is not measured by the value of the property, but by the quantity sold. * * * It is, in fact, a tax upon the sale and use of the product, rather than upon the product itself.'' In the instant case the tax of 3 mills per ton mile is not based on the value of the property but on its weight and the distance it is transported over the highways. Not being a property tax, it follows that the exemption provision of the Constitution likewise has no application.

 Defendants allege that the act violates section 7, article X, of the state Constitution in that the tax is levied for a county purpose, in that one-half of the proceeds of the revenue realized is to be apportioned to the counties on the basis of state highway mileage within the respective counties. We note that this is in substantial form the same provision for division of revenues as provided for in chapter 134, S. L. 1927, supra, regulating common carriers; in chapter 120, S. L. 1935, supra, regulating private carriers for hire, and in the act of 1919 (chapter 168, S. L. 1919), providing for a tax on gasoline used in propelling motor vehicles along the public highways, which latter was held constitutional as against certain objections made and determined in the case of the *Altitude Oil Co. v. People, supra.* But Justice Hilliard, in *Walker v. Bedford,* 93 Colo. 400, 26 P. (2d) 1051, points out that while raised in argument the objection that it violated this section of the Constitution was not passed upon in the Altitude Oil Company case. We think the objection is unsound. The Constitution does not define "for the purpose of any county" nor limit the legislature in its determination of what shall be county purposes. Under section 1244, C. L. 1921 (§2954 G. S.), the construction and maintenance of all public highways was made the duty of the counties. The Highway Law passed in 1921 made a change in the former public policy. It empowered the highway commission to designate certain public highways as state highways and divided public highways into two classes, state and county highways, and made it the duty of the county to construct and maintain only the county highways. In *Hughes v. State,* 97 Colo. 279, 49 P. (2d) 1009, we said: "The test, as to 'county purposes,' is, Is it for strictly county uses, for which the county or its inhabitants alone would benefit, or is it for a purpose in which the entire state is concerned or will benefit?" Few matters are of more general concern to the people of the state than the proper construction and maintenance of public highways. Under the rule

stated, the declaration of the public policy of the state with respect to the duty to construct and maintain public highways and the incidence of the cost thereof is clearly a legislative prerogative. In dividing the revenue remaining after cost of administration between the highway department and the counties, apportioning it on the basis of state highway mileage within the respective counties, the state is not carrying out a county purpose, but carrying out a purpose in which the entire state is concerned.

Plaintiffs contend that the act confers upon the Public Utilities Commission judicial powers contrary to article III of the state Constitution, which distributes the exercise of the executive, legislative and judicial powers among three departments of state and prohibits a person or persons charged with the exercise of powers properly belonging to one department from exercising powers properly belonging to another; and to section 1 of article VI which vests the judicial power of the state in certain courts. This contention the district court expressly upheld. We think such holding was erroneous. Plaintiffs direct their objections to sections 7, 9, 10, 16, 17 and 18 of the act. We are not clearly advised by their brief what powers conferred they contend are judicial powers. We shall consider the effect of the several sections enumerated.

Section 7 of the act sets up the method of collecting and enforcing the tax. Subsection (e) provides that in case of a dispute as to the amount of the tax, the carrier "shall be entitled to a hearing thereon in the same manner as other hearings are held by the commission and its decision shall be subject to judicial review as in this act provided." Subsection (f) provides that failure to file reports, failure to pay the tax or the filing of a false report shall be ground for the revocation of a permit but only on a hearing after five days' notice. The law obligates the carrier to make true reports and to pay the tax. The failure to do so is ground for the revocation of the permit. The law contemplates in its *administration* both the

granting and the revoking of permits. The determination of certain facts may be necessary before a permit may be granted or revoked. The determination of such facts is not the exercise of judicial power. Section 9 itself negatives any contention that it is a delegation of judicial power for it gives to the commission power to ''promulgate such rules and regulations as may be reasonably necessary for the effective administration of the provisions of the act.'' No rules, if made, are complained of and if and when made it will then be time for us to determine whether they involve an assumption of judicial power or are within the intended scope of the section.

Section 10 merely gives the commission the right to inspect the books of the carrier and to expend not to exceed twenty per cent of the revenue for administration expenses. We are not told, and we fail to see, wherein any judicial act is authorized by this section.

Section 16 provides that the commission on complaint of an interested party or upon its own motion may, after hearing on notice, when it shall have been established to the satisfaction of the commission that the permitholder has violated any terms of the act, or of his permit or violated any proper orders, rule or regulation of the commission, revoke, suspend, alter, or amend any such permit issued under the act. But the right to have such action judicially reviewed in the same manner that action of the commission may be reviewed under the Public Utilities Act is expressly reserved to the permit-holders. The granting and revoking of permits which of necessity involves first a determination of certain facts, in the first instance whether the prerequisites to the granting of a permit have been complied with, in the second whether the requisites to the right to retain it have been complied with, and such determination is purely an administrative act. Whether in refusing or revoking a permit the action has been arbitrary is a judicial question and the right to have this determined by the courts is expressly provided for. See 37 C. J. 246, §109; *State ex rel. v. Four Lakes*

*Telephone Co.,* 141 Minn. 124, 169 N. W. 480, P. U. R. 1919B. 247; *Alabama Public Service Commission v. Mobile Gas Co.,* 213 Ala. 50, 104 So. 538, P. U. R. 1926C. 266. In *People ex rel. v. Colorado Title and Trust Co.,* 65 Colo. 472, 178 Pac. 6, in speaking of the powers of the Public Utilities Commission we said: ''The commission acts upon the existence of facts which it must determine, but this is not the exercise of judicial power in a constitutional sense. In administering the law in such a case the commission must necessarily determine many things and facts; this involves investigation, and the exercise of judgment and discretion, incidental to the administration of the law. Because it is of a judicial nature or the exercise of quasi judicial functions does not contravene the Constitution. The determination of certain facts or things in the operation of the law is merely incidental to the administrative powers of the commission. The legislature could delegate power to determine the facts and things upon the decision of which the operation of the law is made to depend. This is not the exercise of judicial power by a commission in the sense that courts administer judicial remedies, but is incidental to the exercise of delegated administrative powers. The exercise of judgment and discretion as an incident to such powers is not the exercise of judicial power within the meaning of the Constitution. The authority delegated to the commission relates to the administration of the law and not to the exercise of judicial remedies. The preliminary determination of facts required to be solved by investigation and the exercise of judgment and discretion are but incidental to the commission's administrative duties.''

Section 17 provides that violations of the act and of rules or regulations of the commission shall be misdemeanors. Section 18 confers on the county and district courts jurisdiction in all matters arising under the act, except as in the act otherwise provided, and save and except those matters expressly delegated to the commission. Neither of these sections is in any sense a delega-

tion of judicial power to the commission. We are not authorized to read into a statute an intention on the part of the legislature to exceed its constitutional powers unless the words used are such that under no reasonable construction such intention can be excluded. It will be observed that the words "all matters arising under the act" are general. They are broad enough to include matters involving both judicial and administrative problems. We think the section is susceptible of a construction that "all matters arising under this act" involving a judicial question shall be determined by the district or county courts, and that "all matters arising under this act" involving an administrative question shall be determined by the commission under the powers expressly delegated in this act. To read the section otherwise would be to read into it not only an intention to delegate to the commission judicial powers, but to read into it also an intention to delegate to the courts administrative or executive powers in all matters arising under the act, except where such powers were expressly delegated to the commission. This section being susceptible of a reasonable construction that brings it within the constitutional powers of the legislature to enact it, we so construe it.

Plaintiffs further contend that the act imposes an unreasonable restriction on the use of the highways; that it prohibits rather than regulates the use of the highways and deprives plaintiffs of their property without due process of law; that the tax or fee does not bear a reasonable relationship to the regulation of the use of the highways, and is arbitrary and unjust, and that it bears no relationship to the promotion and protection of the health, morals or welfare of the people of the state of Colorado.

In the exercise of its police power it cannot now be questioned that for the protection of the public the state may regulate and restrict the manner in which the public highways of the state shall be used. The supreme court of the United States in *Continental Baking Co. v. Wood-*

*ring,* 286 U. S. 352, 52 Sup. Ct. 595, used this language: "Requirements of this sort are clearly within the authority of the state, which may demand compensation for the special facilities it has provided and regulate the use of its highways to promote the public safety. Reasonable regulations to that end are valid as to intrastate traffic and, where there is no discrimination against the interstate commerce which may be affected, do not impose an unconstitutional burden upon that commerce. Motor vehicles may properly be treated as a special class, because their movement over the highways, as this court has said, 'is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves.' "

In *Driverless Car Co. v. Armstrong,* 91 Colo. 334, 14 P. (2d) 1098, we had under consideration an act imposing upon those who rented cars one of the duties imposed by this act, namely, to procure liability insurance. In that case we used the following language: "We do not think that the legislature acted unreasonably in imposing upon driverless car owners alone the requirements found in the challenged provisions of the act. Such provisions were enacted in the exercise of the police power in an effort to secure safety for person and property by regulating the use of the public streets and highways. * * * Another contention is that the questioned provisions constitute an unreasonable interference with a purely private business. As we view it, the provisions do not constitute an interference with, or regulation of, a business that has no relation to matters of public concern. On the contrary, they rest upon the unquestioned power of the state, in the interests of public safety, to prescribe the terms upon which it will permit the use of the public highways to carry on business for gain." It may be assumed that the state could not, under the guise of regulation, prohibit all use of the highways, but that such is not the effect of this act is virtually conceded by the further objection made that it unreasonably restricts the use of the high-

ways. We cannot agree that it does this. The act relates only to those who are transporting goods in furtherance of a commercial enterprise; in other words, to those who are using the roads with the expectation of financial gain, just as are those who rent cars to be driven by others. We held in *Driverless Car Co. v. Armstrong, supra,* that such persons might have restrictions placed on their use of the roads to carry on business for gain, under the police power of the state. The instant case is no different in any essential respect. The police power of the state, the inherent right of the state to protect itself by insuring the peace, health and safety of its citizens, to be effective must meet the exigencies of constantly changing conditions. We know what all men know, that with the improvement of our highways and development of motor transportation that those who transport their goods in furtherance of commercial enterprises over the public highways are an ever increasing number. Their number, the extent of their use of the highways as a class, the proportionate part of the traffic represented by such carriers, and whether it is an increasing proportion or not, the destructive effect of such use with the consequent impairment of the highways and the effect of all of these factors on the safety of the people generally, are matters proper for legislative consideration in determining whether such use is an ordinary or an extraordinary use of the highway facilities provided by the state and whether such carriers constitute a class that requires regulation in the interest of the safety and welfare of the people as a whole.

In *Bushnell v. People, supra,* we quoted with approval from a decision of the supreme court of the United States in *Stephenson v. Binford,* 287 U. S. 251, 53 Sup. Ct. 181, wherein that court had under consideration a Texas act seeking to regulate private carriers for hire, the following: "It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes; and that their use for

purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit. *Packard v. Banton,* 264 U. S. 140, 144, and cases cited; *Frost Trucking Co. v. R. R. Com.,* 271 U. S. 583, 592-593; *Hodge Co. v. Cincinnati,* 284 U. S. 335, 337; *Johnson Transfer & Freight Lines v. Perry,* 47 F. (2d) 900, 902; *Southern Motorways v. Perry,* 39 F. (2d) 145, 147; *People's Transit Co. v. Henshaw,* 20 F. (2d) 87, 89; *Weksler v. Collins,* 317 Ill. 132, 138-139; *Maine Motor Coaches v. Public Utilities,* 125 Me. 63, 65. * * * in the light of the broad general rule just stated, the statute may be construed and sustained as a constitutional exercise of the legislative power to regulate the use of the state highways." The tax of 3 mills per ton mile imposed is the same as the tax imposed on common carriers and private carriers for hire by chapter 134 S. L. 1927 and chapter 120 S. L. 1931, as amended in 1935. In *Bushnell v. People, supra,* we held chapter 120 Session Laws of 1931, constitutional before the tax was reduced from 5 mills to 3 mills by the amendment of 1935. In the light of the foregoing matters we cannot say that the classification for purposes of regulation and the imposition of a tax, or the regulatory requirements or tax imposed were arbitrary, capricious or unreasonable.

 Plaintiffs further urge that the act discriminates in its application arbitrarily and unlawfully between persons of the same class. The district court gave this as one of the specific reasons for overruling defendant's demurrer. We think this holding is not sound. We assume this objection and the finding of the trial court was based on section 20 of the act which is as follows: "Nothing in this Act shall be construed so as to apply to or prohibit the transportation of farm products or livestock to market by any farmer or producer when selling or delivering only such farm products or livestock as shall have been actually grown or produced by such farmer or producer, nor to the transportation by such farmer or producer of supplies to the farm for his own use, provided such farm

products, livestock or supplies are transported in a motor vehicle or vehicles actually belonging to any such farmer or producer; nor to motor vehicles owned and operated by the United States, the State of Colorado, or any. county, city, town or municipal corporation in this state, or by any department of any of them; nor to motor vehicles especially constructed for towing, wrecking and repairing, and not otherwise used in transporting property; nor to hearses or ambulances. And provided further, that nothing in this Act shall be construed as preventing a farmer from occasionally exchanging transportation work with a neighbor.''

In view of what we have held proper for legislative consideration in determining the need for regulation; in view of the express legislative declaration in section 3 of the act: ''That the use of the public highways by commercial carriers by motor vehicle is affected with a public interest and that the safety and welfare of the public traveling upon such highways, the preservation and maintenance of the same, and the proper regulation of motor vehicle common carriers using the highways require the regulation of commercial carriers by motor vehicle to the extent hereinafter provided,'' we are confirmed in the view that the exception is not an unreasonable nor arbitrary discrimination in favor of farmers as a class. Whether their use of the roads is an increasing or diminishing proportion of the use of the highways; whether it is still no more than ''a simple and normal, traditional and necessary use'' of the highways, to use the words of the Supreme Court of Wisconsin in *State ex rel. v. Public Service Com.*, 207 Wis. 664, 242 N. W. 668; the kind and character of motor vehicles commonly used by farmers as a class; their relative destructive effect on the highways as compared with the kind and character of motor vehicles commonly used by other commercial carriers; the relative amount of the burden of road taxation for public highways borne by farmers as a class as compared with that borne by other commercial

carriers; the use of the highways whether seasonal or continuous, are all matters proper for consideration by the legislature in determining the need for regulation and an equitable imposition of the tax burden for the use of the highways. Upon consideration of these things we cannot say that the exemption is clearly discriminatory, which we must be able to do before we are authorized to hold the act void.

An act of the state of Kansas in all essential respects similar to ours was sustained by the United States district court of Kansas, 2nd division, as not violating the Federal Constitution in the case of *Continental Baking Co. v. Woodring,* 55 F. (2d) 347. On appeal to the United States supreme court the judgment of the district court was affirmed. This case is reported in 286 U. S. 352. The Kansas Act included regulation of common carriers and private carriers for hire, which as heretofore pointed out our legislature has covered by separate acts. With this explanation, what was said in the opinion rendered in the district court is so applicable to the present case that we shall quote at some length from that opinion: "Next, it discloses a general intent to levy a reasonable tax for the use of its highways by those who habitually use the highways for business purposes. It divided such users into two general classes, the so-called 'public' and 'contract' carriers, who are engaged in the business of transportation of property by motor vehicle for hire; and 'private' carriers, to which class the plaintiffs belong, who are defined to include 'any person engaged in the transportation by motor vehicle of property sold or to be sold by him in furtherance of any private commercial enterprise.' * * * It requires that private carriers shall apply for a license and furnish certain information, and that, upon the receipt of such information and compliance with the regulations, the license shall be issued. It requires that both public and private carriers conform to certain regulations concerning the safety of the operation of their vehicles, and that both shall provide a bond to indemnify

the public against injury. The statute clearly discloses two general plans, one for the control of public carriers, and the other for the control of private carriers. Reading the statute as a whole, there is no difficulty in arriving at the conclusion that the Legislature intended to confine its control of private carriers to matters of taxation and of public safety. The authorities already cited amply sustain the power of the state over all carriers in these two respects.'' In distinguishing *Smith v. Cahoon*, 283 U. S. 553, 51 Sup. Ct. 582, 75 L. Ed. 1264, the court said: ''The plaintiffs rely principally upon Smith v. Cahoon, supra. That was an appeal from the Supreme Court of Florida (99 Fla. 1174, 128 So. 632), which had denied a writ of habeas corpus to the appellant. The appellant had been arrested for operating a truck without a license. The statute undertook to exempt such public carriers as were engaged in the transportation of agricultural, horticultural, and piscatorial products. To thus distinguish between two public carriers, each of which is engaged in the transportation for hire, and each of which was a habitual and continual user of the highway, on account of the nature of the product carried, was held to be unconstitutional. Moreover, the statute contained provisions which could only be legally applicable to common carriers and other provisions which could be applicable to all carriers, but these provisions were intermingled. When the appellant was arrested, the statute had not been construed. The question to be determined was whether or not the appellant could be restrained of his liberty for violating the statute, the terms of which were obscure, and which had not been construed by the courts. He was released. But the Supreme Court stated: 'It should be observed that this is not an action in equity where the enforcement of a statute awaits the final determination of the court as to validity and scope.' The present case is such an action.''

The statement is made in *Bushnell v. People, supra,* that ''If we were to hold that the legislature intended to

exempt farmers as a class and permit them to transport for compensation farm products of another to market and thus truck the supplies of another, such conclusion might necessitate a determination that the act was bad for inequality." In view of this statement which is not a part of the decision in fact, but on which plaintiffs rely as indicating that an exception within the class is necessarily discriminatory, we call particular attention to the following, from the district court opinion in the Woodring case: "A more troublesome question concerning exemptions is that provision which exempts private carriers 'who operate within a radius of 25 miles beyond the corporate limits of such city.' * * * We have little doubt of the power of the Legislature to add to the city limits this twilight zone of trade territory both because of the problems of administration presented, and because of the fairness of it; and, as long as residents and nonresidents are treated alike within this twilight zone, we think the Legislature did not exceed its powers. In our opinion the decision of the Supreme Court of the United States in Clark v. Maxwell, 282 U. S. 811, 51 S. Ct. 211, 75 L. Ed. 726, is conclusive." In discussing the exception of farmers the following appears in the opinion: "While the act is primarily a taxing statute, it does contemplate regulations looking to the public safety. The exemption of the farmer from such regulations can be sustained on the familiar ground that he makes but casual use of the highways for transportation of his products. The 25-mile exemption is probably sustainable on the ground that the trucks exempted are domiciled in and generally use the city streets; indeed they must use them to get to the city limits; and such trucks are subject to the control of city authorities in these respects."

The Supreme Court of the United States disposed of the question in the following language: "The second exemption extends only to certain private motor carriers. Under the construction above stated, the exemption provides immunity from the provisions of the Act for car-

riers of that class who have an established place of business or base of operations within a city or village and operate within a radius of twenty-five miles beyond the municipal limits. The first question is whether the State, in legislation of this sort, may provide for such carriers an exempt zone contiguous to its municipalities. We find no difficulty in concluding that it may. As the District Court pointed out, there 'is a penumbra of town' that is outside municipal limits, and delivery trucks, of those having establishments within the municipalities, in their daily routine repeatedly cross these limits 'in going back and forth into these outlying additions.' The court found that trucks of that class 'use the state improved highways but slightly, for the streets of these outlying additions are not generally a part of the state system.' The District Court also directed attention to the fact that 'the practical difficulty of keeping track of the mileage of such delivery trucks as they cross back and forth is well-nigh insuperable' and that 'the revenue to be gained from such use would be insignificant and the cost of collection large.' We think that the legislature could properly take these distinctions into account and that there was a reasonable basis for differentiation with respect to that class of operations. In this view, the question is simply whether the fixing of the radius at twenty-five miles is so entirely arbitrary as to be unconstitutional. It is obvious that the legislature in setting up such a zone would have to draw the line somewhere, and unquestionably it had a broad discretion as to where the line should be drawn.''

◼ Plaintiffs complain that ''the tax or fee imposed by the act is so grossly excessive and oppressive that it prevents plaintiffs from using their property in the conduct of their lawful business, and under the guise of public welfare takes plaintiff's property for public purposes without just compensation, contrary to the provisions of section 15 of article 2 of the Constitution of the State of Colorado.'' This is merely the conclusion of plaintiff and no facts are set forth on which we can determine its

correctness. The tax imposed is 3 mills per ton mile. Common carriers and private carriers for hire also are operating under a tax of 3 mills per ton mile. We have no other facts that tend even remotely to throw any light on the reasonableness of the imposition and we cannot say without facts before us that a tax is confiscatory.

Plaintiffs further contend that "said law is repugnant and inconsistent with chapters 163 and 164 of the Session Laws of Colorado for 1935 in that it grants to the Public Utilities Commission of Colorado authority to prescribe the terms and conditions for use of the highways without requiring that such terms and conditions conform to the provisions of said chapters 163 and 164."

We fail to see the repugnancy contended for, but we need not determine whether it exists nor its effect if it does exist until a case arises in which the commission has prescribed terms and conditions for the use of the highways that fail to conform to the provisions of the two chapters referred to. This is not such a case. Plaintiffs' objection 17, "That its application will deprive persons of their property without due process of law, contrary to the provisions of section 25, article 2, of the Constitution of the state of Colorado, and articles 5 and 14 of the amendments to the Constitution of the United States," falls into the same class as the objection last considered. It anticipates evils to come from the *application* of the law. In disposing of similar objections Mr. Chief Justice Hughes in *Continental Baking Co. v. Woodring, supra,* said: "Whatever uncertainty may exist with respect to possible regulations of the commission will be resolved as regulations are promulgated. If any of these transcend constitutional limits, appellants will have their appropriate remedy."

Plaintiffs urge also that "said law unlawfully delegates to the Public Utilities Commission authority to regulate the use of public highways of this state, contrary to the provisions of article 3 and of section 1 of article 5 of the Constitution of the state of Colorado." This

contention the district court expressly sustained. In so doing the district court was in error. Plaintiffs' complaint is particularly directed to a part of section 3 of the act which is as follows: "And the commission upon application shall issue a permit to a commercial carrier by motor vehicle, and may attach to such permit and to the exercise of the rights granted thereunder, such terms and conditions as are reasonable, and consistent with the safety of the public."

There are many conditions that the commission could attach and be within the law. One is the procuring of an insurance policy as required by the act. Another is that the permit be not sold, assigned, leased or encumbered except with the authority of the commission. Another is that the tax imposed shall be paid as specified in the act. Another is that the permit-holder will comply with such rules and regulations as may be reasonably necessary for the effective *administration* of the act, which section 9 gives the commission the power to promulgate.

The last quoted paragraph from the opinion of Chief Justice Hughes in *Continental Baking Co. v. Woodring, supra,* is applicable here. The Supreme Court of Wyoming had before it in *Public Service Comm. v Grimshaw,* 53 P. (2d) 1, the identical question here presented and disposed of it in the following language, which we think is sound law: "In passing, we may refer to that portion of section 10, supra, which assumes to vest power in the commission to attach to the permit to be issued to a contract carrier, 'such terms and conditions as it [the commission] may deem proper for the best interests of the public.' Taking this language at its broad face value, it would appear to have no relation to the end sought by the statute, as well as to be an unconstitutional delegation of power within the meaning of section 1 of article 2 of the Wyoming Constitution, which declares: 'The powers of the government of this state are divided into three distinct departments: the legislative, executive, and judicial, and no person or collection of persons charged with the

exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this Constitution expressly directed or permitted.' However, if the language of said section 10 is construed by the commission so as to permit the insertion of conditions entirely within the purview of the explict provisions of chapter 65 itself, then, of course, the above-indicated consequence would not ensue. Whatever uncertainty may exist with respect to unwarranted terms inserted in such a permit can be resolved when the commission acts concerning the matter. If any of these terms or conditions transcend statutory or constitutional limits, the defendant will, of course, have his appropriate remedy.''

The following objections made by plaintiffs that the act ''grants to certain individuals special or exclusive privileges and immunities contrary to the provisions of section 25 of article 5 of the Constitution of the state of Colorado''; and it ''denies plaintiffs equal protection of the law with other persons in this state, contrary to section 1 of article 14 of the amendments to the Constitution of the United States''; ''that it is a local or special law prohibited by section 25 of article 5 of the Constitution of the State of Colorado''; and that ''the purpose and effect of the act is to grant special privileges to certain classes of persons,'' are all disposed of and answered by our determination that the classification in the act is a proper one and that the legislature might lawfully exempt farmers, hauling their own products, from its operation.

The conclusion of plaintiffs that the act ''presupposes and asserts a proprietary right in all public highways in the state, contrary to fact, and exacts a toll or fee for the use of such highways, contrary to the rights of the people in such counties contributing to support of such highways,'' is non sequitur. The act goes no further than to assume, and properly so, a police power in the state to regulate and license or tax the use of the high-

ways when used to transport freight in furtherance of any commercial enterprise. The proprietary right in the highways is not involved. See excerpt above from the opinion of Mr. Justice Moore in *Bushnell v. People, supra*. The state in this case has merely regulated and taxed an extraordinary use.

 The objections that it imposes unlawful duplicate taxation; that certain sections of the act amend the Code of Civil Procedure without expressly so stating in its title and subject-matter, and that it imposes a toll for the use of highways constructed or reconstructed in whole or in part by federal appropriation contrary to the provisions of the Federal Highway Act are not argued. We fail to see any merit in these objections.

The objection that it deprives plaintiffs of the right of acquiring possessing and protecting their property contrary to the provisions of section 3 of article II of the Constitution of the state of Colorado, we think falls with our determination that the classification for purposes of taxation is reasonable and that it does not appear from facts before us, that the tax imposed is confiscatory.

Since the judgment as entered must be reversed, it is not necessary for us to determine whether costs may be taxed against the defendants.

Judgment is reversed and the cause remanded with instructions to the district court to sustain the demurrer to the complaint.

MR. JUSTICE HOLLAND dissents.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE CAMPBELL, who did not participate. MR. JUSTICE HILLARD not participating.