Mr. Joseph F. Dolan Executive Director Department of Revenue State of Colorado 4th Floor, State Capitol Annex 1375 Sherman Street Denver, Colorado 80261
Dear Mr. Dolan:
You have asked for a formal opinion in response to several questions regarding the liability of sod and turf growers for the Gross Ton Mile Tax.
Farm trucks registered under C.R.S. 1973, 42-3-123(11) are exempt from the Gross Ton Mile Tax. To be registered under subsection 11, a truck must be "owned by a farmer or rancher," and must be "operated over the public highways and . . . used exclusively for transporting to market or place of storage raw agricultural products actually produced or livestock actually raised by such farmer or rancher . . ."
QUESTIONS PRESENTED AND CONCLUSIONS
1. Is "sod" a raw agricultural product as contemplated in section 42-3-123, C.R.S. 1973?
 Authorities can be cited for both sides of the proposition that sod is not a raw agricultural product. But the crucial consideration is whether sod is a raw agricultural product for purposes of Colorado's Gross Ton Mile Tax statute.
2. Are sod growers and turf companies "farmers" within the contemplation of the statute and thus exempt from payment of Gross Ton Mile Tax, or are they "commercial" operators within the contemplation of Weed v. Monfort Feed Lots,Inc., 156 Colo. 577, 402 P.2d 177 (1965)? Will your answer to this question depend on the extent and type of activities engaged in by these companies?
 Sod production involves planting, fertilizing, harvesting, and commercial distribution or installation. Thus, sod producers apparently meet general definitions of "farmers." However, it is my opinion that sod growers are not "farmers" within the context and purposes of the Gross Ton Mile Tax statute.
3. In view of the action taken by John Heckers in issuing a finding after hearing to the effect that sod growers and turf companies are "farmers" what procedural activities would be required to effectively negate or reverse Mr. Heckers decision?
 Neither of Mr. Heckers emergency rules (February 28, 1974 nor April 8, 1974) was made permanent. Under the Administrative Procedures Act, C.R.S. 1973, 24-4-103(6), a temporary rule which is not made permanent has effect for no more than three months from its adoption or for such shorter period as may be otherwise stated. The result is that there currently is no rule in effect relating to the treatment of sod producers for purposes of the Gross Ton Mile Tax statute.
ANALYSIS
Regarding question #1, for example the definition of "agriculture" in C.R.S. 1973, 35-1-101(1), under the State Department of Agriculture Act, includes "horticulture, floriculture, and viticulture." (Also see C.R.S. 1973,39-29-102(1)). And turf seeds are termed "agriculture seeds" under C.R.S. 1973, 35-27-101(2)(a). However, under the Commercial Fertilizer and Soil Conditioner Act, "nonfarm use" includes lawns, greenhouses and nurseries. (See C.R.S. 1973, 35-12-103(26)).
Sod is not listed or included under article 23 of title 35, C.R.S. 1973 entitled "Fruits, Vegetables, and Other Agricultural Products." Agricultural products under this article 23 are inspected after being harvested, and are graded in quality. Yet the Colorado Department of Agriculture inspects sod production only once a year under the Colorado Nursery Act, article 26, title 35, C.R.S. 1973, to look for weeds and insects. The actual product marketed is never inspected or graded.
A major argument offered by sod producers in support of their exemption from the Gross Ton Mile Tax relates to the seasonal nature of farming activities, and their claim that the sod production cycle is equally seasonal. A standard on "seasonal" activities for farming is found in Great Western MushroomCompany v. Industrial Commission, 103 Colo. 39, 82 P.2d 751
(1938) and Park Floral Company v. IndustrialCommission, 104 Colo. 350, 91 P.2d 492 (1939). In these cases, the Colorado Supreme Court examined the growing and harvesting of mushrooms, and certain horticultural activities, and determined that in each of these fact situations, the product was not an agricultural product and that the activity engaged in was not typical farming within the intent of the statutes therein construed.
In the case of sod production, it is my understanding that harvesting and installation activities are in operation eight to nine months out of the year. While this is not the daily activity referred to in Great Western MushroomCompany v. Industrial Commission, supra, andPark Floral Company v. Industrial Commission,supra, it appears to be much lengthier in duration than the normal, typical farm crop operation which I believe the legislature meant to include under this exemption.
While the focus of this opinion is on Colorado law, it is interesting to note a recent federal tax court case. InJohn W. Meyers, Jr. and Lorna M. Meyers, 66 T.C. No. 24 (May 10, 1976), the United States Tax Court ruled that cost depletion would be allowed for topsoil removed and sold with sod, as sod is a "natural deposit." The Tax Court decided that the taxpayers' sod operations were not in the nature of farming, and therefore, they would be entitled to cost depletion for the sod-topsoil.
Although the Meyers case, supra, was decided on the facts in that case, the analysis is helpful here. What is being sold is the topsoil and the sod, for the "harvesting" of sod requires a cutting level below the roots of the grass. This approach buttresses the view that sod is not a raw agricultural product.
The discussion of agricultural products found in 3 Am.Jur.2d Agriculture § 3, is instructive:
 Agricultural products are an absolute essential to the sustenance and well-being of the human race . . . . Although logically such terms as "agricultural products," "farm produce," etc., would include all things produced in the course of the pursuit of agriculture, their meaning, when used in tax or licensing statutes, is frequently dependent upon the context or upon an express definition or limitation to a given class of products.
Within the context of the Gross Ton Mile Tax statute, it is my opinion that sod is not a raw agricultural product.
Any truck used for transporting sod is not used exclusively "for transporting a raw agricultural product," and is not entitled to an exemption from the Gross Ton Mile Tax.
Regarding question #2, in attempting to determine purpose of the exemption for farmers, it is important to review what the court stated in Weed v. Monfort Feed Lots,supra:
 In Public Utilities Commission v. Manley, 99 Colo. 153, 60 P.2d 913, we held that the exemption of farmers from the ton mile tax enacted by the general assembly in 1935 was not discriminatory, and in so holding we made the following comment `. . . Whether their use of the roads is an increasing or diminishing proportion of the use of the highways; whether it is still no more than "a simple and normal, traditional and necessary use' of the highways, to use the words of the Supreme Court of Wisconsin in State ex rel. v. Public Service Com., 207 Wis. 664, 242 N.W. 668; the kind and character of motor vehicles, when used by farmers as a class, their relative destructive affects on the highways as compared with the kind and character of motor vehicles commonly used by other commercial carriers; the relative amount of the burden of road taxation for public highways borne by farmers as a class compared with that borne by other commercial carriers; the use of the highways whether seasonal or continuous, are all matters proper for consideration by the legislature in determining the need for regulation in an equitable imposition of the tax burden for the use of the highways.
 Upon consideration of these things, we cannot say that the exemption is clearly discriminatory . . . .
 It was on this basis, then, that the aforementioned exemption of farmers from the 1935 ton mile tax was found to be proper and nondiscriminatory. In our view for us now to hold that Monfort Feed Lots, Inc., a Colorado corporation, and the other plaintiffs in the instant case are farmers or ranchers would do violence to the reason and basis for our decision in the Manley case.
(Emphasis original.)
It is this type of analysis which leads me to the opinion that to treat sod producers as farmers, and to allow them an exemption from the Gross Ton Mile Tax would not be in keeping with the underlying reasons and bases for the decision in theManley and Monfort cases.
The underlying rationale for this exemption was not meant to include sod and turf production, and the purpose and the spirit of the statute mean that sod and turf producers are not farmers for purposes of the exemption from the Gross Ton Mile Tax statute.
To be registered under C.R.S. 1973, 42-3-123(11), a truck must be both 1) owned by a farmer or rancher and 2) usedexclusively for transporting raw agricultural products or livestock. If either qualification is not met, the truck cannot be registered under subsection 11, it cannot be exempt from the GTM tax under subsection 14. It is my opinion that sod producers are not farmers and that sod is not a raw agricultural product, for purposes of this statute, and neither test is met.
Regarding question #3, on February 28, 1974, John Heckers, then the executive director of the Department of Revenue, issued an emergency rule that turf companies, nurseries and greenhouses were not farmers within the ordinarily accepted meaning of the word as used in section 13-3-23(11)(a) C.R.S. 1963, and they were not entitled to register their vehicles as farm vehicles. On April 8, 1974, John Heckers issued an emergency rule withdrawing and terminating the earlier determination in the emergency rule of February 28, 1974.
Neither of these emergency rules was made permanent. Under the Administrative Procedures Act, C.R.S. 1973, 24-4-103(6), a temporary rule which is not made permanent has effect for no more than three months from its adoption or for such shorter period as may be otherwise stated. The result is that there currently is no rule in effect relating to the treatment of sod producers for purposes of the Gross Ton Mile Tax statute. Gross Ton Mile Tax Regulation 42-3-123(11) does not specifically deal with the issue of sod or sod producers, although it does paraphrase extensively the opinion in Weed v. Monfort Feed Lots, Inc.,supra.
SUMMARY
Because of the varied and contradictory positions of the Department of Revenue, and because of the Administrative Procedures Act, it is essential for the Department to proceed under the formal rule making procedures of the Administrative Procedures Act. From the perspective of the law and tax policy, formal rule making is the proper way to resolve this lingering issue.
Very truly yours,
 J.D. MacFARLANE Attorney General
TAXATION AND REVENUE AGRICULTURE ADMINISTRATIVE PROCEDURE
C.R.S. 1973, 42-3-123(11) C.R.S. 1973, 35-1-101(1) C.R.S. 1973, 35-27-101(2)(a) C.R.S. 1973, 35-12-103(26) C.R.S. 1963, 13-3-23(11)(a)
REVENUE, DEPT. OF Administrative Div.
A truck used for transporting sod is not used exclusively for transporting a raw agricultural product and is not entitled to an exemption from the Gross Ton Mile Tax, nor may sod producers be considered to be farmers entitled to such an exemption. The Department of Revenue should clarify its position on sod farmers by formal rule making.